Elizabeth L. **FERGUSON**, Appellant,

v.

Richard S. **SCHWEIKER**, Secretary United States Department of Health and Human Services.

No. 84–1607.

United States Court of Appeals, Third Circuit.

Argued May 2, 1985.

Decided June 11, 1985.

Eric J. Fischer (Argued), Community Legal Services, Inc., Philadelphia, Pa., for appellant.

Edward S.G. Dennis, Jr., U.S. Atty., Serena Dobson, Asst. U.S. Atty., E.D. Pa., Beverly Dennis, III, Regional Atty., Edith M. Ho (Argued), Asst. Regional Atty., Office of the Gen. Counsel, Dept. of Health & Human Services, Philadelphia, Pa., for appellee.

Before GIBBONS and HIGGINBOTHAM, Circuit Judges and SAROKIN, District Judge *.

### OPINION OF THE COURT

GIBBONS, Circuit Judge.

Elizabeth L. Ferguson appeals from summary judgment in this Supplemental Security Income ("SSI") case in favor of the Secretary of Health and Human Resources. In April of 1980, Ferguson had applied for SSI benefits alleging that she was disabled within the meaning of Title XVI of the

---

* Hon. H. Lee Sarokin, United States District Judge for the District of New Jersey, sitting by designation.

Social Security Act, 42 U.S.C. § 1381 (1982), and § 1382c(a)(3)(A) (1982) *et seq.*[1] Her claims were denied at all administrative levels and the district court held the Secretary's decision to be supported by substantial evidence. Ferguson appeals the Secretary's determination that her impairments are not "severe" within the meaning of 20 C.F.R. § 416.920(c).[2] We conclude that Ferguson has submitted sufficient evidence to prove a *prima facie* case of disability under the standards announced by this court in *Rossi v. Califano*, 602 F.2d 55, 58 (3d Cir.1979), and that the Secretary failed to meet the burden of proof established by *Rossi* for overcoming a claimant's *prima facie* claim for benefits. We, therefore, reverse and remand for entry of an order directing the Secretary to pay disability benefits.

## I.

### Factual Background

Ferguson is 67 years old, has a seventh grade education, has received no vocational training and claims to have been disabled since 1967 or 1968. Her memory of her job positions is vague and confused, but she acknowledges that, from 1952 through 1967, she performed domestic work in private homes that required frequent bending and reaching while mopping, vacuuming, sweeping, and cooking. From 1962–67, Ferguson also operated a power sewing machine with foot controls and did some light hand sewing. In 1978, she attempted to work as a salad maker five days a week, three hours a day. The latter position required her to stand most of the time, walk a great deal, and constantly bend and reach. Ferguson testified that she lifted no more than 15 pounds on this job. She used both hands for washing and cutting the salad and for serving the salad to customers. She lasted only three months in this position.

Dr. Henry Scott, a general practitioner, has been Ferguson's treating physician since 1968. Dr. Scott's letters and clinical notes indicate that Ferguson visited Dr. Scott consistently from 1968 through December of 1982 and that, over this period, he treated her for hypertensive cardiovascular disease, chest pain, lower back pain, anxiety neurosis, degenerative joint disease, headaches, fungus infection of both hands, bronchitis, diabetes-mellitus, and kidney problems. Tr. 194–95, 196–99, 209, 222–79, 284. Her medications since 1979 include arlidin, hydrodiuril, valium, clinoril, antivert, lotrimin, persantine, and a variety of remedies for upper respiratory infections. Tr. 199.

Beginning in 1980, Ferguson filed three separate SSI applications with the Social Security Administration claiming disability dating back to 1968 due to hypertensive heart disease, hardening of the arteries, bronchitis, asthma, and a fungus infection. The three applications were consolidated and only evidence submitted after December 21, 1977 was considered.

At all levels of agency review, the Secretary had access to Dr. Scott's written assessments of Ferguson's condition, which, without exception, classified Ferguson as "disabled" Tr. 196, 284, "not employable" Tr. 196, and "not able to do any work without endanger [sic] to her health and those around her." Tr. 195. By late 1982, in a letter to an Attorney for the Community Legal Services, Dr. Scott opines that

---

1. 42 U.S.C. § 1381 establishes a national program to provide supplemental security income to individuals who have attained age 65 or are blind or disabled. 42 U.S.C. § 1382c(a)(3)(A) reads:

   An individual shall be considered to be disabled for purposes of this subchapter if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months....

2. 20 C.F.R. § 416.920(c) reads:

   *You must have a severe impairment.* If you do not have any impairment(s) which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled. We will not consider your age, education, and work experience.

Ferguson's health was deteriorating. He states that Ferguson has painful and swollen hands which emit a foul odor most of the time due to onychomycosis (chronic fungus infection of both thumbs) and that when attacks are acute she has difficulty holding objects. Dr. Scott also notes that (1) Ferguson experiences shortness of breath, probably due to her hypertensive cardiovascular disease, which is made worse when she sits or rises on a frequent basis; that (2) she cannot lift twenty pounds occasionally or ten pounds frequently without placing an excessive burden on her heart; and that (3) under minor physical or mental stress, Ferguson's heart condition could lead to heart failure. Finally, Dr. Scott reports that other tests and lab reports indicate that Ferguson has mild diabetes, degenerative joint disease, gouty arthritis, some kidney deterioration, and arthritis in her joints that limits her ability to bend, walk, or stand. Tr. 194–95, 213, 215.

In another set of correspondence, Dr. Scott notes that (1) beginning in 1980 Ferguson complained of chest pains and that these pains today are aggravated when she walks or climbs stairs; (2) although the drug persantine gives some relief, "[f]rom a cardiac standpoint she has been advised against over-exertion, which includes prolong [sic] standing, walking, bending, climbing or running;" (3) her arthritis, complicated by gout, has not improved, causing her stiff knees at times, making it difficult for her to walk; (4) although her blood pressure is controlled by hydrodiuril, "medically she has suffered some damaged [sic] to her kidneys, heart and possibly her brain" and (5) she has recently developed a fine tremor in her head, probably resulting from hardening of the arteries due partially to hypertension. Tr. 196.

Two weeks later, Dr. Scott wrote again to add that (1) Ferguson's cardiovascular system had deteriorated; she had developed severe shortness of breath and chest pains on exertion; (2) her fingers remained sore and infected so that it occasionally was very difficult for her to use them; and (3) in spite of adequate medication, her health had further deteriorated. Tr. 199.

By 1983, Ferguson's situation had worsened. She testified before the Administrative Law Judge that she experiences migraine headaches at least three times a week, has difficulty walking more than fifteen minutes, or sitting for more than six minutes, and experiences dizzy spells. Tr. 86, 88–89. She suffers chest pains twice a day that are temporarily relieved by nitroglycerin. She also experiences pain in her legs, back, and hips, for which she takes clinoril and valium. Tr. 88–98, 107–08. She also claims that she cannot lift a ten-pound bag due to the pain in her back and chest. Tr. 105.

Ferguson's normal routine is to arise at 7:30 a.m., make breakfast and sit "as long as I can," then lie in bed from 10:00 a.m. to 2:00 p.m., and from 3:00 p.m. to 5:00 p.m. Tr. 108–09. She is able to make her own bed, get dressed (though she experiences some difficulty with the latter task due to pain in her hands), wash the dishes, dust, machine launder, and attend short church services. Tr. 115. She testifies that she cannot drive, vacuum or shop for groceries alone. Tr. 108–13.

Of primary importance, Ferguson states that she will never be able to return to any of her jobs because (1) as a salad maker, pain in her legs and hips creates an inability to stand or bend; (2) as a machine operator, she cannot sit for the requisite amount of time; and (3) as a domestic helper, she cannot bend, stand very long, or push a vacuum sweeper. Tr. 122–24.

## II.

### Decision of the Secretary

After considering the medical evidence and Ferguson's testimony,[3] the Administrative Law Judge (ALJ) determined that Ferguson did not have a "severe" impairment or combination of impairments that significantly limit her ability to do basic work

---

3. The record contains only evidence and reports submitted by Dr. Scott, and supportive test results. The record does not contain medical reports in support of the Secretary's position.

activities. This conclusion was based on findings; *to wit,* that Ferguson's hypertension has not resulted in end-organ damage and is controlled adequately by medication; that objective evidence regarding her complaints of chest pain and shortness of breath is limited to "non-specific EKG findings," and that her testimony that she cannot lift ten pounds is against the weight of the medical evidence. He also determined that there is no evidence of a symptomatic kidney problem, no clinical explanation for the complaints of headaches, and no reason to believe Ferguson's onychomycosis is vocationally significant. The ALJ believed that the objective evidence regarding any pain Ferguson feels she might have in her joints indicates only mild arthritis, and that her complaints of anxiety neurosis and of poor vision cannot be considered severe since she has not taken steps to see a psychiatrist or an optometrist.

The ALJ also found Ferguson's subjective testimony regarding her pain and shortness of breath lacking in credibility: "In view of the objective medical evidence and the claimant's appearance and demeanor, the undersigned does not believe that the claimant experiences pain or shortness of breath of such frequency, severity and duration as to significantly interfere with her ability to do work." Tr. 18.

Finally, the ALJ refused to give weight to Dr. Scott's conclusion that Ferguson is disabled, finding it not supported by the objective medical findings: "They [Dr. Scott's conclusions] are too speculative to support a finding of disability." Tr. 18.

Thus, Ferguson's application for Supplemental Security Income Benefits was denied. The Appeals Council adopted the recommendation of the ALJ. Tr. 5–6.

### III.

#### The District Court Opinion

Ferguson argued before the district court that the ALJ failed to give sufficient weight to Dr. Scott's statements as required by *Rossi v. Califano,* 602 F.2d 55 (3d Cir.1979). Ferguson claims that her subjective evidence, supported by the statements of her treating physician, were sufficient to establish a *prima facie* case of disability under *Rossi.* The district court disagreed, holding *Rossi* inapplicable when the "credibility" and "compentency" of the treating physician's statements are in issue:

> Since *Rossi* does not require that the ALJ accept all statements by the claimant's treating physician as credible and beyond disbelief which are unsupported by objective evidence, the court finds substantial evidence on the record to support the ALJ's decision to find the physician's assertions unpersuasive and speculative.

District Court Opinion, App. 126 (citations omitted). Moreover, the district court concluded that Ferguson's failure to present objective medical evidence, when viewed against the backdrop of evidence refuting many of the alleged disorders, supported the Secretary's decision of non-disability.

### IV.

#### The Rossi v. Califano *Standard in the Context of an SSI Case*

Ferguson appeals the Secretary's determinations, claiming they are not supported by substantial evidence. Additionally, she argues that the Secretary's decision evidences (1) a failure to allocate properly the burdens of proof; (2) an impermissible substitution of the Administrative Law Judge's medical judgment for that of the treating physician; (3) the failure to accord the treating physician's opinion its proper weight; and (4) improper refusal to credit the appellant's testimony of pain, when objective medical evidence of an impairment is of record.

Ferguson argues (1) that she has submitted enough evidence to prove a *prima facie* case; (2) that the burden shifted to the Secretary; and (3) since there is *no other medical evidence in the record* the Secretary has not met the burden of countering the claimant's evidence of disability. We agree.

In *Rossi v. Califano,* 602 F.2d 55 (3d Cir.1979) [a Title II case], we stated:

> There is a two-pronged test for social security act disability: (1) determination of the extent of disability; and (2) determination whether that impairment results in inability to engage in substantial gainful activity. *A claimant satisfies her initial burden of proof by showing that she is unable to return to her customary occupation. . . . Once she has made such a demonstration, the burden of proof shifts to the Secretary* to show that the claimant, given her age, education, and work experience, has the capacity to perform specific jobs that exist in the national economy. . . . *If there is no finding as to the availability of alternative employment a denial of disability benefits can only be sustained if there is medical evidence in the record that claimant's impairment did not prevent her from engaging in her former occupation.*

602 F.2d at 57 (emphasis added, footnotes omitted). Thus, under proper disability procedures, Ferguson must satisfy her burden by showing an inability to return to former work. The burden then shifts to the Secretary to show that there is other employment the applicant is capable of performing. *Rossi,* 602 F.2d at 58; *Dobrowolsky v. Califano,* 606 F.2d 403 (3d Cir.1979).

■ We believe that for purposes of her SSI claim Ferguson has produced sufficient supporting medical documentation to prove a *prima facie* case of disability and that the burden of proof shifted to the Secretary. As noted above, Dr. Scott's conclusions, as of late 1982, were that (1) under *minor* physical or mental stress, Ferguson's heart condition could lead to heart failure; (2) Ferguson experiences *severe* shortness of breath and chest pains upon exertion; (3) she cannot lift twenty pounds occasionally or ten pounds frequently without placing an excessive burden on her heart; (4) her chest pain is made worse when sitting and rising on a frequent basis; and (5) she has been advised against overexertion, which includes prolonged standing, walking, bending, climbing, and running in order to protect her heart. All of these conclusions were based on laboratory reports contained in the record. We believe that the evidence offered by the treating physician is substantial evidence for the conclusion that Ferguson is significantly limited in those physical abilities necessary to do basic work activities such as lifting, pushing, pulling, carrying, prolonged standing, walking, bending, climbing, and running, and also for the determination that she cannot return to any prior work which involves the same. There is simply no *medical* opinion in the record to the contrary.

■ Under Title II and *Rossi, supra,* it is the claimant's burden to prove, by medical evidence, that she cannot return to past employment. Ferguson has more than met this burden. Furthermore, if the ALJ believed such evidence was inconclusive or unclear, it was incumbent upon him to secure whatever evidence he believed was needed to make a sound determination.[4]

4. The statutory language in Title II which places the burden of proof as to the medical basis of a finding of disability on the claimant at all times is simply not present in Title XVI. *See* 42 U.S.C. § 423(d)(5) (1976). For example, although the definitions of disability for the Supplemental Security Income for the Aged, Blind and Disabled Program (Title XVI of the Act) are practically identical to the definitions in Title II (*cf.* 42 U.S.C. § 1382c(a)(3)(A), (B), (C) & (D) *with* 42 U.S.C. § 423(d)(1)(2), (3) & (4)), a provision such as § 423(d)(5) is noticeably absent from Title XVI.

The reason for such absence is explained in the legislative history. The legislative history makes clear that the SSI benefits program is a program for *needy* aged, blind, and disabled who do not have insured status and thus do not qualify for benefits under Title II. H.R. No. 92–231, *reproduced in* 1972 U.S.Code Cong. & Ad. News 4989–92, 5133. Thus, although the definitions of disability under both programs are the same, the burden of producing the medical documentation required to establish disability is not:

> Your committee recognizes that under a needs program, it would be unreasonable to expect a claimant to pay for the medical evidence necessary to establish disability or blindness or even to provide the same extent of medical documentation required under Title II of the Social Security Act. *Thus, the*

The applicant, having satisfied her initial burden of proof by demonstrating her inability to return to her former job as salad maker, domestic, or machine operator, the burden of proof shifted to the Secretary to show that Ferguson, given her overall condition, nevertheless retained sufficient capacity to perform specific jobs existing in the national economy.

▮ We also note that the ALJ acted improperly in discrediting the opinions of Dr. Scott by finding them contrary to the objective medical evidence contained in the file. By independently reviewing and interpreting the laboratory reports, the ALJ impermissibly substituted his own judgment for that of a physician; an ALJ is not free to set his own expertise against that of a physician who presents competent evidence.[5] Again, if the ALJ believed that Dr. Scott's reports were conclusory or unclear, it was incumbent upon the ALJ to secure additional evidence from another physician.

▮ As to Ferguson's complaints of subjective pain, the Secretary's acts are at odds with the Third Circuit standard, which requires (1) that subjective complaints of pain be seriously considered, even where not fully confirmed by objective medical evidence, *Smith v. Califano*, 637 F.2d 968, 972 (3d Cir.1981); *Bittel v. Richardson*, 441 F.2d 1193, 1195 (3d Cir.1971); (2) that subjective pain "may support a claim for disability benefits," *Bittel*, 441 F.2d at 1195, and "may be disabling," *Smith*, 637 F.2d at 972; (3) that when such complaints are supported by medical evidence, they should be given great weight, *Taybron v. Harris*, 667 F.2d 412, 415 n. 6 (3d Cir.1981); and finally (4) that where a claimant's testimony as to pain is reasonably supported by medical evidence, the ALJ may not dis-count claimant's pain without contrary medical evidence. *Green v. Schweiker*, 749 F.2d 1066, 1070 (3d Cir.1984); *Smith*, 637 F.2d at 972.

▮ Based on this record, we believe that Ferguson's subjective complaints of pain and shortness of breath should have been credited since they are supported by Dr. Scott's statements and by evidence of medical impairments "which could reasonably be expected to produce the pain or other symptoms alleged." *Green*, 749 F.2d at 1069 (3d Cir.1984) (referencing Section 3(a)(1) of the Social Security Disability Benefits Reform Act of 1984, Pub.L. No. 98–460, *reprinted in* 130 Cong.Rec. H9821–9827, 20 C.F.R. § 416.929 (1984)). Under the Act, objective medical proof of each and every element of pain is not required. *Id.* at 1070; *see also Kent v. Schweiker*, 710 F.2d 110, 115 (3d Cir.1983) (testimony of subjective pain is entitled to great weight, particularly when supported by competent medical evidence).

Because the ALJ determined that Ferguson's impairments are not severe he did not reach the question of whether her impairments prevent her from returning to her customary employment as salad maker, sewing machine operator, or domestic assistant. Unless a medical opinion to the contrary is obtained, the evidence of record appears to establish that Ferguson cannot return to her past work.

Since Ferguson has established a *prima facie* case of disability, since there is no substantial contrary evidence, and since there is no evidence of the possibility of alternative employment, we find the Secretary's decision not supported by substantial evidence. The judgment of the district court will be reversed and remanded with a

---

*Secretary would be expected to secure the needed medical evidence and [sic] the evidence was needed to make a sound determination. Id.* at 5134 (emphasis added). Thus, in an SSI case, if there is insufficient medical documentation or if the medical documentation is unclear, it is incumbent upon the Secretary to secure any additional evidence needed to make a sound determination.

5. *See Van Horn v. Schweiker*, 717 F.2d 871, 874 (3d Cir.1983); *Kent v. Schweiker*, 710 F.2d 110, 114–15 (3d Cir.1983); *Kelly v. Railroad Retirement Board*, 625 F.2d 486, 494 (3d Cir.1980); *Fowler v. Califano*, 596 F.2d 600, 602–03 (3d Cir.1979); *Rossi v. Califano*, 602 F.2d at 58; *Gober v. Matthews*, 574 F.2d 772, 797 (3d Cir. 1978); *see also Wallace v. Secretary*, 722 F.2d 1150, 1155 (3d Cir.1983) (opinion of a treating physician is entitled to substantial weight).

direction for an order directing the Secretary to pay disability benefits.