Leroy JOHNSON

v.

Louis W. SULLIVAN, M.D., Secretary of Health and Human Services.

Civ. A. No. 88–1260.

United States District Court,
E.D. Pennsylvania.

Aug. 6, 1990.

665

Roberta Mueller, Community Legal Services, Inc., Thomas D. Sutton, Philadelphia, Pa., for plaintiff.

Catherine Votaw, James G. Sheehan, Asst U.S. Attys., Philadelphia, Pa., for Otis R. Bowen.

MEMORANDUM

GILES, District Judge.

### A. Factual and Procedural Background

Claimant, Leroy Johnson, told his therapist that he had been abusing alcohol since adolescence. Record at 182. He began treatment at the (alcohol) Outreach Program of Jefferson Medical College in August 1984. At the time of his admission to the program, he stated that he was drinking heavily. *Id.* He attended weekly therapy sessions from August 1984 through March 1985.

On March 20, 1985, claimant was struck by a car and sustained severe damage to his left knee. He underwent reconstructive surgery at St. Joseph's Hospital on March 22, 1985 and was casted for six weeks. Upon release from the hospital, claimant returned to therapy for alcoholism. He stopped attending these sessions in July 1985, telling his therapist that his daily physical therapy for his knee prevented him from continuing alcohol treatment therapy. Record at 158. He applied for supplemental security income benefits on May 27, 1986 alleging disability due to pain in his left knee. From October 1986 through February 1987, claimant again attended alcohol therapy sessions at Jefferson Medical College.

When the administrative hearing was held, claimant was 34 years of age with a seventh grade education and had been employed on and off through his adult life as a laborer. He last worked in 1977 loading and unloading trucks, which required him to lift and carry objects weighing over one-hundred pounds. Unemployed since 1977, he contends that his alcoholism and his knee trouble render him disabled under the Social Security Act and, thus, entitle him to benefits.

The Secretary of Health and Human Services ("Secretary") denied claimant's application initially and on reconsideration. Claimant timely requested a hearing on August 28, 1986 which was held before an Administrative Law Judge (ALJ) on January 12, 1987. The ALJ issued a written opinion on September 8, 1987, denying benefits to claimant. On December 18, 1987, the Appeals Council denied claimant's request for review adopting the ALJ's decision as the final decision of the Secretary.

On September 22, 1988, claimant filed a motion for summary judgment in this court. By stipulation of the parties, the claimant's case was remanded for further evaluation of his alcohol problem. The Appeals Council, in its order of remand on March 31, 1989, ordered that a supplemental hearing be held at which the claimant and a Vocational Expert should testify as to claimant's ability to work. Accordingly, the ALJ held a supplemental hearing on June 17, 1989, at which claimant, a Medical Advisor, and a Vocational Expert testified. On August 24, 1989, the ALJ again recommended denial of benefits. On March 13, 1990, the Appeals Council issued a final decision modifying the findings of the ALJ and affirming the denial of benefits. Claimant appeals this decision by requesting that summary judgment be entered in his favor. The Secretary cross-moves for summary judgment requesting affirmance of his decision.

For the reasons discussed below, the claimant's motion for summary judgment is denied in part and granted in part. The case is remanded to the Secretary for further investigation of claimant's ability to perform jobs available in the national economy in light of his substance abuse.

### B. The Standard of Review

■ Review of a final decision of the Secretary is limited to a determination of whether or not that decision is supported by substantial evidence. *Brown v. Bowen,* 845 F.2d 1211, 1213 (3d Cir.1988). Substantial evidence is "more than a mere scintilla, but may be less than a preponderance." *Woody v. Secretary of Health and Human Services,* 859 F.2d 1156, 1159 (3d Cir. 1988). It has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct.

206, 216, 83 L.Ed. 126 (1938)). Furthermore, the Secretary's factual findings, if supported by substantial evidence, are conclusive. 42 U.S.C. §§ 405(g), 1383(c)(3); *Rivera v. Harris*, 623 F.2d 212, 216 (2d Cir.1980).

Disability is defined by the Act as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A) (1982). Further, a "physical or mental impairment" is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3).

■ The claimant may show that he is disabled in one of two ways. He can either demonstrate that his impairment meets one of the "listed" impairments, or he may introduce evidence that his "residual functional capacity" does not allow him to perform relevant past work or any other work in the national economy. If claimant's impairment meets one of the "listed" impairments, he is considered disabled *per se*, and there is no need to examine his residual functional capacity. *Woody*, 859 F.2d at 1159 (3d Cir.1988). If claimant's impairment does not meet one of the "listed" impairments, claimant has the initial burden of demonstrating that he is unable to return to his former employment. *Rossi v. Califano*, 602 F.2d 55 (3d Cir.1979). Once established, the burden shifts to the Secretary to show that the claimant is capable of performing alternative employment that exists in the national economy. *Dobrowolsky v. Califano*, 606 F.2d 403 (3d Cir.1979).

The Appeals Council found that claimant was not disabled under either the "listed impairment" test or the "residual functional capacity test." First, the Appeals Council found that while claimant "is status post left knee constructive surgery and has a history of alcoholism," he did not have an impairment or combination of impairments listed in Appendix 1, Subpart P, Regulations No. 4. Record at 189. The Appeals Council further found that while claimant is unable to perform his past relevant work, he possessed a "residual functional capacity to perform a limited range of light and sedentary work." *Id.* As discussed below, this finding is not supported by substantial evidence because the ALJ and Appeals Council did not apply the correct standards for determining if a claimant can control his or her alcohol use. The case is remanded for further vocational testimony.

### C. Claimant's Arthritis Claim

#### 1. Listed Impairment § 1.03

■ Claimant asserts that his knee impairment meets the listing of 20 C.F.R. Regs. No. 404, Subpart P, Appendix 1, § 1.03, "Arthritis of a major weight-bearing joint." § 1.03 reads:

Arthritis of a major weight-bearing joint (due to any cause):

With history of persistent joint pain and stiffness with signs of marked limitation of motion or abnormal motion of the affected joint on current physical examination. With:

A. Gross anatomical deformity of hip or knee (e.g. subluxation, contracture, bony or fibrous ankylosis, instability) supported by X-ray evidence of either significant joint space narrowing or significant bony destruction and markedly limiting ability to walk and stand or

B. Reconstructive surgery or surgical arthrodesis of a major weight-bearing joint and return to full weight-bearing status did not occur, or is not expected to occur, within 12 months of onset.

"Major joints" are defined in Appendix 1 as "hip, knee, ankle, shoulder, elbow, or wrist and hand." 20 C.F.R.Regs. No. 404, Subpart P, App. 1, § 1.00(d).

Although claimant displayed marked limitation of flexibility of his left knee, the ALJ found that claimant did not meet either requirement A, which requires gross anatomical deformity supported by X-ray evidence, or requirement B, which requires failure to return to full weight-bearing status for 12 months after reconstructive sur-

gery. Record at 29. The ALJ's finding that claimant did not meet § 1.03 was affirmed by the Appeals Council. This finding is supported by substantial evidence.

Dr. Barry S. Gleimer, D.O., an orthopedic surgeon, examined claimant in December of 1985 because he complained of persistent pain and stiffness of his left knee, which he claimed to have experienced since the reconstructive surgery on March 22, 1985. Record at 105. After a biopsy ruled out infection, Dr. Gleimer diagnosed claimant as experiencing "heterotopic ossification, left knee." *Id.* Heterotopic ossification is an abnormal bone growth. J.E. Schmidt, M.D., *Attorney's Dictionary of Medicine* (1981).

In order to meet § 1.03(A), claimant must have a gross anatomical deformity of his knee, supported by X-ray evidence of either significant joint space narrowing or significant bony destruction and markedly limiting ability to walk and stand. The medical evidence supports a finding of heterotopic bone formation but does not suggest a gross anatomical deformity which meets the § 1.03(A) standard.

While claimant was under anesthesia for the biopsy, Dr. Gleimer also manipulated claimant's knee. Record at 105. Dr. Gleimer noted that under surgical manipulation, claimant was able to achieve "90% of motion." Record at 123. Upon his release from the hospital on December 16, 1985, Dr. Gleimer noted that claimant was "ambulating well." Record at 105. Although the ALJ noted that claimant's knee stiffened and caused him pain soon after his release from the hospital, claimant apparently did achieve full weight-bearing status within 12 months of the initial reconstructive surgery on March 22, 1985, precluding a finding of disability based upon § 1.03(B). Thus, the ALJ's finding that claimant does not meet the listed impairment in § 1.03(A) or (B) is supported by substantial evidence.

### 2. Subjective Complaints of Pain

■ Claimant complained of pain. Subjective complaints of pain must be seriously considered, even if they are not fully confirmed by objective medical evidence. *Smith v. Califano,* 637 F.2d 968, 972 (3d Cir.1981). While subjective complaints of pain may support a finding of disability, a claimant's subjective complaints of pain alone do not constitute a disability. *Green v. Schweiker,* 749 F.2d 1066, 1070 (3d Cir. 1984). Although the ALJ may not substitute his own judgment for that of a physician, *Ferguson v. Schweiker,* 765 F.2d 31, 37 (3d Cir.1985), he is entitled to evaluate credibility and arrive at an independent judgment, in light of the entire record, as to the true extent of pain. *Smith,* 637 F.2d at 968.

■ The ALJ properly considered the entire record in determining that claimant's allegations of disabling pain were not consistent with the objective record evidence. None of claimant's physicians stated that they could explain objectively claimant's pain. Record at 105, 125, and 133. Indeed, the non-treating physician consulted by the ALJ, Dr. Klinghoffer, stated that claimant's condition was not consistent with the amount of pain claimant reported. Record at 140. The ALJ considered the lack of objective evidence as well as claimant's testimony before finding claimant's assertion of subjective pain not to be credible. Record at 30, Record at 206. The Appeals Council adopted this finding. Record at 189. Thus, this finding is supported by substantial evidence.

### D. Alcoholism

#### 1. Standards in the Third Circuit:

■ The Social Security regulations recognize that substance addiction, if it is severe enough, may preclude claimant from engaging in substantial gainful employment and, therefore, may provide an independent basis for disability. 20 C.F.R. Regs. No. 404, Subpart P, App. 1, § 12.09. The second paragraph of § 12.09 reads:

The required level of severity for these disorders is met when the requirements in any of the following (A through I) are satisfied.

A. Organic mental disorders. Evaluate under 12.02.

B. Depressive syndrome. Evaluate under 12.04.

C. Anxiety disorders. Evaluate under 12.06.

D. Personality disorders. Evaluate under 12.08.

E. Peripheral neuropathies. Evaluate under 11.14.

F. Liver damage. Evaluate under 5.05.

G. Gastritis. Evaluate under 5.04.

H. Pancreatitis. Evaluate under 5.08.

I. Seizures. Evaluate under 11.02 or 11.03.

Claimant does not contend an exertional impairment which could meet the severity requirements of § 12.09(E)–(I). Therefore, the applicable severity test is the one referred to in § 12.09(A)–(D). Regs. No. 404, Subpart P, App. 1, § 12.09.

Sections 12.02, 12.04, 12.06, and 12.08 which provide guidelines for determining when the disorders with which they coincide are sufficiently severe, are substantially the same. They all require that claimant's disability results in three or more of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere); or

4. Repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behaviors).

See, e.g., 20 C.F.R., Regs. No. 404, Subpart P, App. 1, § 12.08(B).

Claimant contends that this regulation requires him to meet an entirely different disability listing in order to qualify for benefits due to alcohol abuse. For example, a claimant alleging alcoholism can fulfill the test of § 12.09 only by meeting one of the disabilities listed in that section, such as organic mental disorders with the severity level as provided by § 12.02(B).

Therefore, claimant argues that this regulation violates the law of the third circuit, which provides that alcoholism may provide an independent basis for disability. However, the Secretary's construction of the second paragraph of § 12.09 does not require claimant to meet an entirely separate disability listing before qualifying for benefits if claimant can meet the severity requirements of the listing. *Wilkerson v. Sullivan*, 904 F.2d 826, 844 (3d Cir.1990). Recently, the third circuit accepted the Secretary's construction of this paragraph.

In *Wilkerson v. Sullivan*, 727 F.Supp. 925 (E.D.Pa.1989), the district court reversed the Secretary's finding that the claimant was not disabled due to alcoholism, suggesting that a finding of alcoholism renders claimant disabled *per se.* The district court also suggested that the Secretary perniciously refused to follow the law of the third circuit regarding alcoholism. *Id.* at 938. On appeal, the third circuit reversed the district court and held that the Secretary's construction of § 12.09 complies with *McShea v. Schweiker*, 700 F.2d 117 (3d Cir.1983) and *Purter v. Heckler*, 771 F.2d 682 (3d Cir.1985), which reflect the following principles:

(1) alcoholism is defined by the inability to control the use of alcohol;

(2) alcoholism, by itself, can constitute a disability for purposes of SSI and SSDI programs;

(3) the Secretary must recognize that end-organ damage is not the only way to prove disability due to alcoholism;

(4) the fact that a claimant suffers from alcoholism is not the end of the inquiry for purposes of awarding SSI or SSDI benefits; and

(5) instead, the claimant's alcoholism must be severe enough to prevent him from engaging in substantial gainful employment.

*Wilkerson*, at 844. Since the third circuit recently determined that § 12.09, as interpreted by the Secretary, does not violate *McShea* and *Purter*, the only issue remaining in this case is whether the regulations were properly applied to the claimant.

2. Application to Claimant:

 The relevant inquiries are whether claimant suffers from alcoholism and, if so, whether the alcoholism is severe enough to prevent him from engaging in substantial gainful employment. *Purter*, 771 F.2d at 698. In *Purter*, the third circuit stated that:

> [T]he relevant inquiry where there is evidence of alcoholism is not whether the claimant should be able to control his drinking problem or that he says that he can control it, but rather "whether the claimant is addicted to alcohol and, as a consequence, has lost the ability to control its use." The issue of alcoholism, and its interrelationship with other impairments, must then be evaluated to determine whether the claimant can engage in substantial gainful activity.

*Purter*, 771 F.2d at 698, citing *McShea*, 700 F.2d at 119.

The ALJ found that claimant can control his use of alcohol and, therefore, that claimant was not disabled. Record at 204. This finding was adopted by the Appeals Council. Record at 189. However, this finding is not supported by substantial evidence, which has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401, 91 S.Ct. at 1427 (quoting *Consolidated Edison Co.*, 305 U.S. at 229, 59 S.Ct. at 216).

The ALJ refers to claimant's attempts to control his alcohol consumption through therapy as evidence of claimant's ability to control his consumption. Record at 203. However, the third circuit has stated that a claimant's "pattern of failed attempts" at rehabilitation is evidence of inability to control the use of alcohol and must be given "substantial weight" in determining the existence of control. *Purter*, 771 F.2d at 698 n. 19, 699.

Here, the record indicates that claimant drank while he was in therapy and was often turned away from Alcoholics Anonymous meetings because he was intoxicated. Record at 149, 153, 159, 161–63, and 233–34. Contrary to the ALJ's finding that claimant "completed treatment," Record at 204, the record indicates that claimant left therapy against the advice of his therapist. Record at 150. *See Koszewski v. Bowen*, 700 F.Supp. 10, 12 (W.D.Pa.1988) (rejecting ALJ's "blithe conclusion" that claimant had done well in therapy where claimant's repeated attempts at rehabilitation failed). Therefore, the ALJ cannot rely upon claimant's failed attempts at rehabilitation as substantial evidence of claimant's ability to control his alcohol consumption.

As further evidence that claimant is able to control his alcohol use, the ALJ noted that claimant can wait to drink until State (liquor) stores open in the morning. Record at 204. The ALJ characterizes the medical advisor's testimony regarding claimant's alcoholism as follows:

> The evidence shows that he has no difficulty in awaiting the opening of a tavern or the State store and that he is able to control his drinking when he wants. If he had lost control of drinking he would secrete [sic] bottles and would not be able to wait for the liquor store or tavern to open.

Record at 204.

In characterizing the claimant's testimony as supportive of the claim that claimant can control his drinking, the ALJ ignores the cautioning of the *Purter* court that a claimant's own testimony of control over his drinking is less important than a showing of actual control. *Purter*, 771 F.2d at 698. The ALJ never referred to claimant's testimony that he often has "something" in the house to drink when he awakens in the morning. Record at 52. Furthermore, the ALJ never mentions claimant's admission at the supplemental hearing that he has credit at neighborhood speakeasies, Record at 232, where alcohol could be obtained at all hours.

The ALJ has discretion to discount evidence which he finds less than credible and may choose not to accept as credible claimant's testimony about his drinking habits. However, the ALJ did not state that he did not believe claimant's testimony as to his drinking habits. Rather, he rested his opinion solely on this portion of claimant's testimony.

Moreover, a "reasonable mind" would not accept as adequate to support a finding of control testimony that he waits for a liquor store to open when examined in light of the full record. *See, e.g., George v. Sullivan,* No. B–88–3217 (D.Md., November 30, 1989); Unempl.Ins.Rep. (CCH) § 15,127A (fact that claimant does not drink when ill, when taking prescription medications, or on the one morning per month when she goes grocery shopping does not support finding of ability to control alcohol use where claimant had a history of failed alcohol rehabilitation treatment and has never been able to refrain from drinking for more than three consecutive months).

Lastly, to support his finding the ALJ cites a statement made by claimant's therapist, Daniel Schwartz, that "any disability the claimant had was related to his left leg and not alcoholism." Record at 203–204. Actually, the statement, as recorded by a Social Security Administration employee, states "[h]e [Schwartz] explained he thought his [claimant's] case was regarding his leg." Record at 146.

In its March 31, 1989 remand order, the Appeals Council admonished the ALJ and said "the outreach therapists's statement that he thought claimant's claim for supplemental security income was based only on his knee condition does not outweigh the amount and extent of treatment given claimant for substance abuse as reflected in the report submitted by the therapist." Record at 225. However, even after the supplemental hearing, the ALJ again relies upon the therapist's statement to support the conclusion that claimant was not suffering from alcoholism. Record at 203. In modifying and adopting the ALJ's second recommendation, the Appeals Council did not repeat this admonishment but the Appeals Council did note that the ALJ completed a Psychiatric Review Technique form which is "somewhat inconsistent with the record." Record at 188.

The ALJ's determination that claimant can control his use of alcohol is not supported by substantial evidence. The evidence relied upon by the ALJ would not lead a reasonable mind to reach the conclusion that claimant could control his use of alcohol. The evidence shows that claimant cannot control his use of alcohol. The relevant inquiry is whether claimant's alcoholism is severe enough to prevent him from engaging in substantial gainful employment. Claimant has proven that his knee injury precludes him from returning to his past relevant work of loading trucks. Record at 30, 189 and 206. However, he did not evaluate claimant's ability to perform an alternate job in light of his alcoholism. The Secretary bears the burden of showing that claimant, considering his age, education, work experience, skills, and physical shortcomings, had the capacity to perform an alternate job and that this type of job existed in the national economy. *Dobrowolsky,* 606 F.2d at 408.

In response to a hypothetical question which assumed that claimant was drinking once or twice a week and had not "lost completely the control of the use of alcohol," the vocational expert opined that claimant would be capable of performing several specific light or sedentary positions, including ticket taker in a theater, inspector, sorter or grader, and packager. Record at 246–47. This vocational testimony was expressly conditioned on claimant's ability to control his alcohol use. Record at 247. Since the ALJ's determination of claimant's ability to control his alcohol consumption was erroneous, the vocational testimony upon which the Secretary relied cannot be used as substantial evidence. *Chrupcala v. Heckler,* 829 F.2d 1269, 1276 (3d Cir.1987); *Podedworny v. Harris,* 745 F.2d 210, 218 (3d Cir.1984); *Wallace v. Secretary of Health and Human Services,* 722 F.2d 1150, 1155 (3d Cir.1983). Since the hypothetical posed to the Vocational Expert was deficient, the ALJ had no evidence upon which to base his conclusion that there were jobs in the national economy which claimant was able to perform.

There is substantial evidence throughout the record that claimant suffered from chronic alcoholism. The Secretary's finding that claimant can control his alcohol use is based on an erroneous under-

standing of "control." The ALJ's finding that claimant can perform jobs in the national economy was based upon a deficient hypothetical. For these reasons, this case is remanded for proper determination of claimant's ability to work at a job which exists in the national economy.

An appropriate order follows.

ORDER

AND NOW, this 2nd day of August, 1990, it is hereby ORDERED that:

1. Plaintiff's motion for summary judgment is GRANTED in part and DENIED in part. Plaintiff's motion is GRANTED as to his claimed disability due to alcohol abuse and DENIED as to his claimed disability as to his left knee.

2. This case is REMANDED to the Secretary for further vocational testimony on claimant's ability to perform work in the national economy due to alcohol abuse.