

Villanova University School of Law Digital Repository

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-21-2004

# Maiorano v. Comm Social Security

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-3690

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Maiorano v. Comm Social Security" (2004). *2004 Decisions.* Paper 475.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/475

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

03-3690

_____

CYNTHIA A. MAIORANO,
                              Appellant

v.

JOANNE B. BARNHART, COMMISSIONER
OF SOCIAL SECURITY

_____

On appeal from the United States District Court
for the District of New Jersey
District Judge: The Honorable Jerome B. Simandle
District Court No. 01-cv-02535

_____

Argued June 15, 2004

Before: ALITO, SMITH AND BECKER, *Circuit Judges*

(Filed: July 21, 2004)

Robert A. Petruzzelli (Argued)
Jacobs, Schwalbe & Petruzelli
Ten Melrose Avenue
Woodcrest Pavilion, Suite 340
Cherry Hill, NJ 08034
*Counsel for Appellant*

Peter G. O'Malley (Argued)
Office of the United States Attorney
970 Broad Street, Room 700
Newark, NJ 07102

Karen G. Fiszer
Social Security Administration
Office of General Counsel - Region II
26 Federal Plaza
New York, NY 10278
*Counsel for Appellee*

———————————————

OPINION OF THE COURT

———————————————

SMITH, *Circuit Judge.*

Cynthia Maiorano appeals from the District Court's order affirming the denial by the Commissioner of Social Security of her claim for disability benefits under Title II of the Social Security Act. The District Court had jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 405(g). We exercise appellate jurisdiction pursuant to 28 U.S.C. § 1291. Our review is "identical to that of the District Court, namely to determine whether there is substantial evidence to support the Commissioner's decision." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999); 42 U.S.C. § 405(g). In *Richardson v. Perales*, 402 U.S. 389, 401 (1971), the Supreme Court explained that substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Because we conclude that the Commissioner's decision was not supported by substantial evidence, the District Court erred in affirming the denial of benefits and we will reverse and remand for further proceedings.

Maiorano filed for benefits in February 1998, alleging disability on the basis of

Thoracic Outlet Syndrome and Reflex Sympathetic Dystrophy ("RSD") stemming from an injury sustained when a ceiling tile fell and hit the superior aspect of her right shoulder in May 1996. Social Security Ruling 03-2p instructs that RSD is a term used to describe a chronic pain syndrome that is manifested by "a constellation of symptoms and signs," of which the most characteristic sign is persistent, intense pain that appears "out of proportion to the severity of the injury sustained by the individual." Notably absent from the diagnostic criteria for this malady is any laboratory test or diagnostic procedure. Rather, diagnosis is made based on the presence of complaints of pain associated with several other physical findings, including swelling of the affected extremity, changes in skin color and/or temperature, abnormal hair or nail growth, and involuntary movements of the affected region of the initial injury.

Maiorano's initial course of treatment provided some relief from her pain, but she was again complaining of pain in April 1997. Dr. Rosenberg, an orthopedist, evaluated plaintiff. He documented that her neuromotor examination was essentially normal, but noted that her "pain and symptoms are way out of proportion to any of her physical findings and concerns about sympathetic dystrophy are at play here." A subsequent evaluation at the end of June 1997 by another orthopedic surgeon, Dr. Smolenski, revealed "no objective findings to substantiate" Maiorano's subjective complaints of pain.

Maiorano's pain persisted and in September 1997 she consulted Dr. Korn, a pain specialist who had initially evaluated her. He treated Maiorano on a weekly basis with

3

trigger point injections, percutaneous electrical nerve stimulations, and medication. On January 28, 1998, Dr. Korn documented complaints of "coldness" in Maiorano's right upper extremity, together with "bluish discolorations" of the right hand. Physical examination revealed that Maiorano's right upper extremity had a decreased temperature. Dr. Korn's progress note stated that, "[i]n light of persistent right upper extremity pain, dysesthesias, and color change, a consideration of chronic regional pain syndrome type I ([RSD]) is made."

Maiorano continued to experience pain in her right arm accompanied by swelling, discoloration, and coldness. She returned to Dr. Korn on a regular basis for treatment. In October 1998, Dr. Korn referred Maiorano for a functional capacity evaluation. Although physical evaluation revealed that Maiorano's range of motion and strength were within normal limits, her complaints of pain increased with the activity, and she ambulated with her right arm held closely to her body. The assessment indicated that although Maiorano "appeared motivated to participate in the examination," she "offered a submaximal performance during this testing period." The examiner opined, however, that Maiorano's "pain reports appeared consistent throughout" and that her "reports and behaviors were consistent with her diagnosis."

Subsequently, Dr. Korn completed a disability form, noting that Maiorano's diagnosis was RSD. The physical findings to support the diagnosis of RSD included pain, numbness, discoloration and cold sensation throughout Maiorano's right arm. Dr.

4

Korn opined that Maiorano was severely limited in her ability to work and was unable to perform any repetitive activity with her right arm.

Dr. Korn referred Maiorano to Dr. Rosen. After evaluating Maiorano on December 1, 1998, Dr. Rosen agreed with Dr. Korn that "there is a high likelihood that she is symptomatic from a type I complex regional pain syndrome." After a trial period with a spinal cord stimulator showed favorable results, Dr. Rosen surgically implanted a stimulator on March 31, 1999. Maiorano's pre- and post-operative diagnoses were both RSD of the right upper extremity.

According to Dr. Rosen, Maiorano had a "superb result" from the surgery. Approximately two months after the operation, Dr. Rosen opined that Maiorano had "excellent stimulation. . . . At rest, she has minimal pain." He documented, however, that "[a]ny type of sustained activity increases her pain. Even doing household chores increases her pain substantially. Sitting in one position for too long also increases her pain. She does need to change positions to minimize her persistent pain syndrome." That same day, Dr. Rosen completed a Lumbar Spinal Residual Functional Capacity Questionnaire, indicating that Maiorano's diagnosis was RSD of the right upper extremity and that the clinical findings supporting that diagnosis were "pain [and] temperature changes" of that extremity. He opined that Maiorano was limited with regard to her physical abilities, particularly the use of her right arm which restricted lifting to less than ten pounds on an occasional basis and precluded the use of her right arm for repetitive

5

activities during an eight hour workday.

During the hearing before the Administrative Law Judge ("ALJ"), Maiorano admitted that her pain was "not as bad now with the stimulator." She explained that her activity level remained limited because her right arm swelled with walking and she was essentially unable to lift that arm.

A vocational expert also testified at the ALJ hearing. In response to a hypothetical posed by the ALJ, the vocational expert identified several light duty jobs that could be performed by an individual with restrictions similar to some of Maiorano's. The hypothetical assumed that the individual was able to lift ten pounds frequently, and the positions identified by the vocational expert required frequent reaching, handling and fingering. The vocational expert conceded that an inability to use one's dominant hand, as Dr. Rosen had opined, was incompatible with the positions she had identified.

Despite the fact that Dr. Rosen's opinion limited Maiorano to less than the full range of sedentary work, the ALJ concluded that she was capable of performing the light level positions identified by the vocational expert as existing in the national economy. The ALJ explained that he discounted the opinions of both Dr. Korn and Dr. Rosen because they were not supported by medically acceptable clinical and laboratory diagnostic evidence. In addition, the ALJ found their assessments to be "merely conclusory statements based on [Maiorano's] subjective complaints." The Appeals Council denied Maiorano's request for review, thereby rendering the ALJ's decision the

final decision of the Commissioner.

Maiorano appealed, but the District Court affirmed the Commissioner's final decision denying her claim for benefits. Maiorano's appeal to this Court argues that the ALJ improperly discounted the opinions of her treating physicians, Dr. Korn and Dr. Rosen. As a result, Maiorano asserts, the ALJ erred in determining that she had the residual functional capacity to perform certain light level work. We agree.

In *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985), we acknowledged that subjective complaints may support a claim for disability benefits. We instructed that when such complaints are supported by medical evidence, they should be given great weight. *Id.* In *Plummer*, we declared that great weight should also be accorded to "[t]reating physicians' reports . . . especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" 186 F.3d at 429 (quoting *Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir. 1987)). We explained that a treating physician's opinion may be rejected "only on the basis of contradictory medical evidence," although the opinion may be accorded "more or less weight depending upon the extent to which supporting explanations are provided." *Plummer*, 186 F.3d at 429.

After reviewing the record, we conclude that the ALJ failed to comply with the standards set forth in *Ferguson* and *Plummer* because he discounted, without an adequate explanation, the uncontradicted opinions of Dr. Korn and Dr. Rosen that Maiorano was

7

afflicted with RSD and was unable to use her right arm for repetitive activity. Both physicians had treated Maiorano for a substantial period of time, documenting not only her persistent complaints of pain, which were characteristic of RSD, and the resulting limitations, but also the other symptoms of RSD that she manifested. Dr. Rosen's progress notes and reports also documented: (1) the additional testing that was performed to determine if the implantation of a spinal cord stimulator was warranted; (2) her favorable response to the surgical implantation; and (3) the fact that Maiorano's ability to use her right arm remained severely restricted after surgery, particularly with respect to lifting and repetitive activity. Yet the ALJ failed to even discuss this limitation in his determination that she was able to perform certain light level work.

We recognize that the ALJ cited the opinions of two non-examining consultants as evidence to support his decision. Neither opinion, however, supports the ALJ's reasoning because each failed to address Maiorano's diagnosis of RSD and preceded her surgery by almost fifteen months. Nor did the negative reports of several diagnostic tests, *e.g.*, MRIs, a bone scan and an EMG, upon which the ALJ relied, run counter to the diagnosis of RSD. Those clinical tests, none of which are definitive for diagnosing RSD, merely confirmed the absence of other causes for plaintiff's pain and limitations.

It is significant that Maiorano's testimony that she remained limited with respect to the use of her right arm was consistent with not only the opinions of Dr. Korn and Dr. Rosen, but also their documentation before and after surgery. Thus, under *Ferguson*, 765

F.2d at 37, the ALJ should have accorded great weight to Maiorano's subjective testimony in determining her residual functional capacity.

In sum, because the ALJ failed to adequately explain why he discounted the opinions of Maiorano's treating physicians that the use of her right arm was severely limited with respect to her ability to lift and to engage in repetitive activity, we conclude that the ALJ's decision is not supported by substantial evidence. We will reverse and remand for further proceedings so that the ALJ may reconsider whether Maiorano's RSD is disabling for purposes of the Social Security Act.

_____