**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-2686
_____

MARIE UBALDINI,
Appellant

v.

COMMISSIONER SOCIAL SECURITY
_____

On Appeal from the United States District Court
For the Eastern District of Pennsylvania
(District Court No. 2-20-cv-04356)
Magistrate Judge:  Honorable Richard A. Lloret
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a) October 20, 2023
_____

Before: CHAGARES, Chief Judge, PHIPPS and CHUNG, Circuit Judges

(Filed October 24, 2023)
_____

OPINION[*]
_____

CHUNG, Circuit Judge.

Marie Ubaldini ("Ubaldini") appeals the District Court's denial of her request for

---

[*]      This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

review of an Administrative Law Judge's ("ALJ") decision denying her applications for social security disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act (the "Act"), respectively. Having ensured the ALJ's decision is supported by substantial evidence, we will affirm.

I.       BACKGROUND[1]

Ubaldini applied for benefits under the Act approximately twenty-eight months after she was struck by an SUV on October 31, 2015, while riding her motorcycle. She sustained injuries to her "left foot, fractured her ribs[,] and had a splenic laceration." Appendix ("App.") 20. In the following years, she continued to experience pain, particularly in her left foot, and received treatment that included physical therapy; epidural injections; wearing a brace; aqua therapy; prescriptions for oxycodone, prednisone, and topical lidocaine gel; and, in September 2018, a fusion of "her left mid-foot area at the first, second, and third TMT [(tarsometatarsal)] joints." Id. at 20–21. When she applied for benefits under the Act in 2018, she alleged disability since the day of her accident.

After an initial administrative denial of her benefits applications, Ubaldini sought review by an ALJ for a determination that she was, in fact, "disabled" under the Act. Accordingly, the ALJ performed the five-step sequential evaluation used to determine disability under the Act and also concluded that Ubaldini was not disabled.[2]

---

[1]       Because we write for the parties, we recite only facts pertinent to our decision.

[2]       "The ALJ must review (1) the claimant's current work activity; (2) the medical severity and duration of the claimant's impairments; (3) whether the claimant's

2

Ubaldini contests the ALJ's findings at the fourth step[3] that the limitations arising from her impairments resulted in a residual functional capacity ("RFC") permitting her to perform sedentary work restricted to "simple, routine work," but not to perform her past relevant work as a photographer. Id. at 19.[4] Ubaldini also challenges the ALJ's finding at the fifth step that she could perform other work and such work would be available to her in the national economy. Id. at 24–25.

For purposes of step four of the analysis, where the ALJ assessed the extent of limitations on her ability to work, Ubaldini offered medical records and testified at the hearing about her medical impairments, symptoms, and limitations. At the hearing, the ALJ asked Ubaldini what prevented her from performing a job where she sat for most of the day. Ubaldini responded that she would likely not be able to perform such a job

---

impairments meet or equal the requirements of an impairment listed in the regulations; (4) whether the claimant has the residual functional capacity to return to past relevant work; and (5) if the claimant cannot return to past relevant work, whether he or she can 'make an adjustment to other work' in the national economy." Smith v. Comm'r of Soc. Sec., 631 F.3d 632, 634 (3d Cir. 2010) (citing 20 C.F.R. § 404.1520(a)(4)(i)-(v)); 20 C.F.R. § 416.920(a)(4)(i)-(v); Hess v. Comm'r Soc. Sec., 931 F.3d 198, 202 n.2 (3d Cir. 2019) (We "treat the [residual functional capacity] assessment as part of step four.").

[3]     Ubaldini frames her challenge as one to the adequacy of the hypothetical relied upon by the ALJ. While challenges to a hypothetical tend to implicate an ALJ's findings at step five, "[o]bjections to the adequacy of hypothetical questions posed to a vocational expert often boil down to attacks on the RFC assessment itself." Rutherford v. Barnhart, 399 F.3d 546, 554 n.8 (3d Cir. 2005). Accordingly, we regard Ubaldini's challenge as one to the ALJ's findings at both steps four and five.

[4]     Sedentary work is defined as "work [that] involves lifting no more than 10 pounds at a time"; "occasionally lifting or carrying articles like docket files, ledgers, and small tools"; and only occasional "walking and standing." 20 C.F.R. §§ 404.1567(a), 416.967(a).

because it would be difficult "getting to that location [of the job] in the first place." Id. at 46. When asked whether she could do such a job if she could get there, Ubaldini testified that "[o]nce [she] g[o]t there, [her] pain would be so high that it would, it would affect [her] … ability … and just probably concentration and mental clarity." Id. at 47. In addition to this evidence, the ALJ also received evidence from a consultative examination of Ubaldini that was performed by Dr. Andrea Woll after the hearing.

With respect to the remainder of step four and step five—that is, whether or not Ubaldini could return to past relevant work or perform other work available in the national economy—the ALJ heard testimony from a vocational expert. The ALJ asked the vocational expert three hypothetical questions to understand whether any jobs would be available in the national economy to Ubaldini if she were affected by various possible limitations. Two hypothetical examples posited situations where Ubaldini suffered from limitations which were more restrictive than those the ALJ ultimately found at step four. As to both of these hypotheticals, the vocational expert testified no work would be available. Because the ALJ did not find that these limitations accurately reflected Ubaldini's condition, the ALJ did not rely on these hypotheticals at step five.

The ALJ also asked the vocational expert to consider an individual who, among other things, was "restricted to sedentary work" and who, "due to the effects of medication[,] would be restricted to simple, routine tasks." Id. at 49. The vocational expert testified that such an individual could not return to Ubaldini's past work as a photographer, but that other work would be available to her, for example, as an "inspector," "pack[er]," or "sort[er]." Id. At step five, the ALJ relied on the vocational

4

expert's response to this hypothetical, found that work would be available to Ubaldini, and concluded that Ubaldini was not disabled under the Act.

Ubaldini challenged the ALJ's finding that she was not disabled before the Social Security Administration Appeals Council and, upon their denial of her request for review, again before the District Court.[5] The District Court denied Ubaldini's request for review after deciding the ALJ's decision was supported by substantial evidence and free of legal errors. Ubaldini timely appealed.

II.    DISCUSSION[6]

Like the District Court, we review the ALJ's decision for substantial evidence. Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019). This standard for evidentiary sufficiency is "not high." Id. It requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)). Our review of the ALJ's decision and record assures us that the ALJ, at step four, found all limitations that were established by the evidence in determining Ubaldini's RFC. Our review also leads us to conclude that at step five, the ALJ relied upon the hypothetical that accurately reflected Ubaldini's abilities as set forth in the RFC and that the vocational expert's testimony thus constituted substantial evidence supporting the ALJ's decision that work was available to her.

---

[5]    With the parties' consent, Magistrate Judge Richard A. Lloret conducted the proceedings in this matter. We refer to the Magistrate Judge as the District Court throughout this opinion.

[6]    The District Court had jurisdiction pursuant to 42 U.S.C. § 405(g). We have jurisdiction pursuant to 28 U.S.C. § 1291.

A.    The ALJ's Conclusion that Ubaldini Could Perform Sedentary Work with Further Restriction to Simple, Routine Tasks was Supported by Substantial Evidence

A limitation is credibly established if it is "supported by medical evidence and … 'otherwise uncontroverted in the record.'" Zirnsak v. Colvin, 777 F.3d 607, 614–15 (3d Cir. 2014) (quoting Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2005)). Where there is conflicting evidence in the record relevant to an alleged limitation, an "ALJ has discretion to choose whether to include that limitation" as long as he does not "reject evidence of a limitation for an unsupported reason." Id. at 615 (citing Rutherford, 399 F.3d at 554).

Ubaldini contends that her subjective complaints and descriptions of limitation were uncontradicted and supported by medical evidence and that the ALJ was wrong to make an RFC finding contrary to her own subjective reports. When ALJs evaluate complaints of subjective pain, we require them to "seriously consider[]" such complaints recognizing that pain "may be disabling," and we further require that complaints supported by medical evidence receive "great weight" and not be "discount[ed] … without contrary medical evidence." Ferguson v. Schweiker, 765 F.2d 31, 37 (3d Cir. 1985) (citations omitted).

Based on our review of the ALJ's decision and record, we cannot agree with Ubaldini. The ALJ accepted that Ubaldini's "medically determinable impairments could reasonably be expected to cause [her] alleged symptoms," App. 22, like interfering with her concentration and mental clarity, and the ALJ did not overlook any medical evidence in the record that supported Ubaldini's testimony. The record also reflects that the ALJ

6

seriously considered Ubaldini's representations that she could not work due to pain, had difficulty concentrating, had foot and back pain that affected mobility, and experienced tiredness and nausea from her medications.

Ubaldini's testimony was not the only evidence the ALJ was required to weigh and consider, however, and ultimately, he determined that evidence in the record did not support her statements regarding symptom intensity and resulting limitations. In addition to Ubaldini's own statements, the ALJ considered evidence of Ubaldini's post-accident hospitalization and subsequent treatment of fractures in her foot, including Ubaldini's treatment at the Pain Institute starting in March 2017; evidence from the following year that included the results of diagnostic imaging; evidence from later that year reflecting additional diagnoses and a fusion procedure undertaken in response; and evidence from 2019, including the post-hearing consultative examination. The ALJ also considered medical source statements from, among others, Dr. Wen Chao, Dr. Lauren McFadden, and Dr. Woll (the consultative examiner). Finally, the ALJ considered evidence of Ubaldini's daily activities, which included making small meals, online shopping, showering, bathing, dressing, reading, socializing, and watching television.

Weighing all the evidence before him, the ALJ determined that the record did not support a finding that Ubaldini's abilities were as severely limited as she claimed. He explained the sedentary work restriction was justified by Ubaldini's "multiple surgical procedures … and the additional pain that she reports even with medication and therapy." App. 24. Moreover, he included the "simple, routine tasks" restriction to accommodate the "side effects that [Ubaldini] reported to have with her pain medications." Id. He

7

supported his assessment with evidence of consultative examination findings within normal limits: Ubaldini had no pain or spasm in her spine; her lower extremity joints were stable; she had good lower-extremity strength; she was able to ambulate with a cane; and she was able to get up and down from the exam table without issue. Id. at 22. The ALJ also noted that the record contained no evidence that Ubaldini's pain affected her ability to sit, id., and it was permissible for the ALJ to rely on the *absence* of such evidence in evaluating Ubaldini's complaint of disabling pain. See Dumas v. Schweiker, 712 F.2d 1545, 1553 (2d Cir. 1983) ("The Secretary is entitled to rely not only on what the record says, but also on what it does not say."). The ALJ correctly rejected as unpersuasive Dr. Chao's and Dr. McFadden's "disabled" and "temporarily disabled" opinions because that determination is reserved to the Commissioner. App. 23; see 20 C.F.R. §§ 404.1520b(c)(3)(i); 416.920b(c)(3)(i) (a medical source's statement that a claimant is or is not disabled is "inherently neither valuable nor persuasive"). In light of the above, we find the ALJ supported Ubaldini's RFC with substantial evidence—that is, evidence that would satisfy a reasonable mind. Biestek, 139 S. Ct. at 1154.

      B.      The ALJ's Conclusion that Work was Available to Ubaldini was Supported by Substantial Evidence

When ALJs assess whether a claimant can return to past work or adjust to other work, they often rely on "the testimony of vocational experts and specialists." Zirnsak, 777 F.3d at 612. A vocational expert's testimony often "centers upon, one or more hypothetical questions posed by the ALJ to the vocational expert." Id. at 614 (quoting Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984)). An ALJ's mere inclusion of

8

certain alleged limitations among the hypothetical questions does not reflect the ALJ's acceptance that a claimant suffers from such limitations. See Podedworny, 745 F.2d at 218 ("[T]he ALJ may proffer a variety of assumptions to the expert …."). But a vocational expert's assessment of a hypothetical situation and conclusion that work is available is only reliable evidence of work availability when a hypothetical "accurately portray[s] a claimant's impairments," by "includ[ing] all '*credibly established limitations*' in the hypothetical." Zirnsak, 777 F.3d at 614 (quoting Rutherford, 399 F.3d at 554); see also Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987).

Ubaldini argues that the ALJ improperly omitted her constant and severe pain and the effects of pain medication from the hypothetical upon which the ALJ ultimately relied at step five.[7] She argues that instead, the ALJ should have relied on the expert's finding that no work was available to her based on the other two hypotheticals posited. But it was appropriate for the ALJ *not* to rely on this testimony as the limitations posited therein were not credibly established. Because the ALJ relied upon a hypothetical that accurately reflected his finding regarding the extent of Ubaldini's limitations,[8] the vocational

---

[7]    The Commissioner argues that Ubaldini only offered the District Court a conclusory argument concerning the ALJ's reliance on vocational expert testimony. Because this matter is easily resolved on the merits in the Commissioner's favor, we will not address the alleged inadequacy of Ubaldini's presentation of her argument to the District Court.

[8]    In addition, in determination of said limitations, the ALJ fully considered Ubaldini's subjective reports of constant and severe pain as well as the effects of pain medication upon her.

9

expert's testimony in response—that work was available—constituted substantial evidence to support the ALJ's non-disability determination.

### III.    CONCLUSION

For the foregoing reasons, we will affirm the order entered August 11, 2022, denying Ubaldini's request for review and dismissing her case with prejudice.