Joseph ROCCO, Appellant,

v.

Margaret M. HECKLER, Secretary of Health and Human Services.

No. 87–3015.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit Rule 12(6) June 25, 1987.

Decided Aug. 31, 1987.

Martin Singer, Caroselli, Spagnolli & Beachler, Pittsburgh, Pa., for appellant.

Beverly Dennis, Chief Counsel, Region III, Charlotte Hardnett, Supervisory Asst., Regional Counsel, Colette A. Pete, Asst. Regional Counsel, Dept. of Health and Human Services, Philadelphia, Pa., J. Alan Johnson, U.S. Atty., Albert Schollaert, Asst. U.S. Atty., W.D.Pa., Pittsburgh, Pa., for appellee.

Before GIBBONS, Chief Judge, WEIS, Circuit Judge, and POLLAK,* District Judge.

## OPINION OF THE COURT

WEIS, Circuit Judge.

This appeal is from the district court's grant of summary judgment in favor of the Secretary, thus denying the claimant's request for disability benefits under the Social Security Act.

Claimant Rocco suffers from a variety of ailments: severe lumbar stenosis, arthritis, diverticulosis, gout, hypertension, diabetes, and obesity. He is now 48 years old and has a ninth-grade education. In the past claimant worked as a self-employed carpenter, plasterer, laborer, and truck driver. He has not been employed since 1982. Because his insured status extends through December 31, 1984, claimant must show that he was disabled before that date.

The Secretary denied the first claim submitted on November 21, 1983. Rocco filed a second claim on September 21, 1984. An ALJ reviewed both claims de novo and, after a hearing, denied benefits. Conceding that claimant suffers from several impairments and can no longer pursue his former occupation, the ALJ nevertheless found that Rocco is capable of performing sedentary work.

* The Honorable Louis H. Pollak, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

In addition to his own testimony, claimant produced reports by his attending physicians. Dr. Anthony Susen, a Board-certified neurosurgeon, operated on the claimant's lower back in February, 1983 and again in September, 1983. The doctor observed that x-rays of Rocco's lumbar spine "look as though each vertebra had a D–10 bulldozer running over it a few times and it tried to heal." In a report dated October 18, 1983, Dr. Susen said, "This man is certainly totally disabled at the present time for any type of work. I doubt if this man will ever be able to return to heavy work with respect to his low back because of his stenotic lumbar spine not withstanding the surgery that he has had."

Dr. George Wheeling saw claimant in December, 1983 and January, 1984, after the two surgical procedures had been performed by Dr. Susen. Dr. Wheeling found nerve root impairment and recurrent disc or scar tissue in the lumbar area. A CT scan indicated calcified ligaments and/or protruding discs. He recommended lumbar blocks, but postponed additional surgery until claimant could lose weight. The doctor considered claimant totally disabled. In a supplemental report, Dr. Wheeling noted that claimant was admitted to Lee Hospital on May 14, 1985, where he underwent conservative treatment for his back pain. The doctor opined, "I consider him totally disabled at the present."

Dr. Clyde Harriger has been the claimant's family physician for more than twenty years. He stated that the back injury occurred in 1968 when Rocco lifted a heavy radiator. After that incident, claimant received treatment at Greensburg Hospital. In his report of October 17, 1984, Dr. Harriger commented that although claimant had "a history of almost malignant type obesity for which he has received treatment," he had failed to lose weight despite "honest efforts over the years" in going to various physicians and clinics. The doctor described the course of treatment for the claimant's hypertension, gout, and slowly progressive diabetes, and enumerated the medications prescribed for each of those ailments. In addition, Dr. Harriger detailed the claimant's continuing back problems and explained the medical efforts to reduce the accompanying pain.

The Harriger report concluded: "It is my feeling, and I concur with the specialists involved that Mr. Rocco is totally incapable of holding down full time employment in any type of occupation. He is unable to stand, sit or bend or kneel with any kind of freedom for any prolonged period of time. I feel that he is totally and permanently disabled from any type of gainful employment."

In June, 1985, Dr. Harriger submitted a supplemental report to the Appeals Council. This report indicated that, in addition to his previously existing conditions, claimant had developed diverticulitis in November, 1984, and that Dr. James Furnary had performed a colectomy at Mercy Hospital in Johnstown. Dr. Harriger concluded his report as follows, "I unequivocally believe Mr. Rocco is completely disabled, that he is unemployable for any type of position I could name, and finally that his prognosis is not good."

The Social Security Administration referred the claimant to Dr. Yoon Jin Chung, a physiatrist, for an evaluation in November, 1984. Dr. Chung found that claimant had a limitation of motion for forward bending, but that lateral bending and rotation of back movements were within normal limits although accompanied by tenderness of the lower back. The doctor also noted that claimant had a heel spur removed in September, 1983. According to Dr. Chung's evaluation, claimant suffered from chronic lower back pain and right trochanteric bursitis. The examiner could not rule out possible spinal stenosis or "possible right meralgia paresthetica on the right." The report concluded, "[a]t the present time I feel that the patient is not able to perform the job which requires much stress to the lower back."

A review of the record reveals numerous hospitalizations since 1982. The following list is not warranted to be complete:

August 27, 1982—Conemaugh Valley Memorial Hospital, Johnstown;

February 15, 1983—Montefiore Hospital, Pittsburgh;

July 25, 1983—Conemaugh Valley Hospital and transferred to Montefiore Hospital;

September 6, 1983—Montefiore Hospital;

November 28, 1983—Conemaugh Valley Hospital;

October 15, 1984—Mercy Hospital, Johnstown;

November 3, 1984—Mercy Hospital;

May 14, 1985—Lee Hospital, Johnstown;

October 31, 1985—Montefiore Hospital

In his opinion, the ALJ found that the claimant's complaints of pain and physical limitations were not credible. Although conceding that a number of attending physicians had diagnosed claimant as disabled, the ALJ observed that those statements might "include the physician's personal concept of what constitutes 'disability,' which may or may not be consistent with the criteria of the Social Security Act." The ALJ concluded that "the objective clinical evidence" demonstrates that "all substantial gainful activity is not precluded by the claimant's limitations."

The medical evidence recited to this point demonstrates that claimant has substantial physical impairments. Despite the uncontradicted opinions of the attending physicians, as well as that of the examiner to whom the Social Security Administration referred claimant, the ALJ and Appeals Council found that claimant was not disabled within the meaning of the Act. That determination flies in the face of the medical evidence. Neither the ALJ nor the Council set forth any basis for substituting their judgment for the reports of the medical experts.

In *Podedworny v. Harris*, 745 F.2d 210, 217 (3d Cir.1984), we cautioned the Social Security Administration about disregarding the opinions of attending physicians, particularly "when the opinion reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." That admonition applies here, where Dr. Harriger's opinion was dismissed without a reasoned explanation even though that physician had been attending the claimant for more than twenty years.

In *Dorf v. Bowen*, 794 F.2d 896, 901 (3d Cir.1986), we criticized the "wholesale discounting" of a claimant's complaints by an ALJ who relied on the opinion of a non-examining medical adviser when the record supported a finding of disability. In the case before us, even the Secretary's examining physician found claimant to be disabled to some unspecified extent.

■ This court has often pointed out that an ALJ should not ignore complaints of pain made by a claimant to his attending physician. *Id.* at 902; *Smith v. Califano*, 637 F.2d 968, 972 (3d Cir.1981); *Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir.1979). Here, the claimant's back pain was manifested, not only by complaints to the physicians, but by numerous hospitalizations and surgical procedures. The ALJ's finding that the claimant's complaints of pain under these circumstances were "not credible" cannot be regarded as supported by substantial evidence. Indeed, the contrary conclusion is irresistible.

We have on numerous occasions advised ALJs not to rely on their own expertise in evaluating the medical condition of claimants, but to base their appraisals on testimony in the record. *Fowler v. Califano*, 596 F.2d 600 (3d Cir.1979); *Gober v. Matthews*, 574 F.2d 772 (3d Cir.1978). We cannot say that the record here demonstrates compliance with our strong suggestions.

In *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir.1987), we said that in order to discharge the burden of determining whether a claimant is capable of working on a "regular, continuing or sustained basis," the Secretary must take into account frequent medical episodes requiring hospitalization. There, we concluded that even if the claimant "were able to obtain an unskilled, sedentary job, it is not reasonable to expect him to be able to retain any such job when he has an impairment" that requires frequent hospitalization. 823 F.2d at 778. In the case at hand, the record of the claimant's hospital admissions shows that since 1982 this individual has needed repeated

in-patient treatment. These hospitalizations would obviously hinder his performance of a sedentary job assuming he were even able to cope with such employment.

■ Claimant seeks permission to introduce evidence of three additional hospitalizations during 1985 and 1986. Although the insured eligibility period expired in 1984, medical data of events that occurred thereafter may be helpful in evaluating the claimant's actual condition before the end of 1984. Often a diagnosis or prognosis is necessarily only an educated guess that must await later developments to confirm or disprove the doctor's original impression. That possibility suggests that the Secretary should review the evidence of medical treatment after 1984.

It would serve no useful purpose to review our precedents at great length because it is obvious that the Secretary's decision cannot be sustained on this record. We are persuaded that the evidence submitted by the attending physicians was not given the credence it deserved, the claimant's complaints of pain were not properly evaluated in light of the medical evidence, and the Secretary failed to consider the inability of claimant to maintain continuous employment. Finally, we believe that the Secretary should have the opportunity to review the evidence of medical treatment occurring in 1985 and 1986.

Accordingly, the judgment of the district court will be vacated, and the case will be remanded with instructions to remand to the Secretary for further proceedings consistent with this opinion.