**Marie DAVIS, Plaintiff,**

v.

**Kenneth S. APFEL, Commissioner of Social Security, Defendant.**

**No. Civ.A. 00–513–SLR.**

United States District Court, D. Delaware.

June 27, 2001.

---

Gary C. Linarducci, New Castle, Delaware, for plaintiff.

Richard Andrews, Acting United States Attorney, Patricia C. Hannigan, Assistant United States Attorney, United States Attorney's Office, Wilmington, Delaware, for defendant, of counsel, James A. Winn, Regional Chief Counsel, Robert W. Flynn, Assistant Regional Counsel, Social Security Administration, Philadelphia, Pennsylvania.

## MEMORANDUM OPINION

ROBINSON, Chief Judge.

## I. INTRODUCTION

Plaintiff Marie Davis filed this action against defendant Kenneth S. Apfel, the Commissioner of Social Security ("Commissioner"), on May 23, 2000. (D.I. 1) Plaintiff seeks judicial review of the Administrative Law Judge's decision pursuant to § 205(g) of the Social Security Act, as amended in 42 U.S.C. § 405(g), denying her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act. 42 U.S.C. §§ 401–433. Currently before the court are the parties' cross-motions for summary judgment. (D.I. 11, 14) For the reasons that follow, the court shall grant the Commissioner's motion and deny plaintiff's motion.

## II. PROCEDURAL HISTORY

On June 25, 1996, plaintiff filed an application for DIB with the Social Security Administration ("SSA"). (D.I. 5 at 105–107) The SSA rejected plaintiff's claims on August 22, 1996 and again upon reconsideration on October 19, 1996. (*Id.* at 90–93, 98–101) On March 18, 1998, an Administrative Law Judge ("ALJ") held a hearing at which plaintiff testified and was represented by counsel. (*Id.* at 40) The ALJ also heard testimony from a vocational expert, and additional medical evidence was provided. On May 26, 1998, the ALJ issued a decision denying plaintiff benefits. (*Id.* at 11–20) After reviewing the full record, the ALJ found the following:

1) The claimant met the disability insured status requirements of the Act on December 27, 1994, the date she stated she became unable to work, and continues to meet them through December 31, 2001.

2) Ms. Davis has not engaged in substantial gainful activity since December 27, 1994.

3) The medical evidence established that the claimant had a severe impairment, but that she does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.[1]

4) Ms. Davis' statements concerning her impairments and their impact on her ability to work are not entirely credible.[2]

5) The claimant has the residual functional capacity to perform work related activities except for work that requires lifting more then 20 pounds, or working at heights or moving machinery (20 C.F.R. 404.1545).

6) Ms. Davis' past relevant work as library assistant did not require the performance of work related activities precluded by the above limitations (20 CFR 404.1565).

1. The ALJ further found that:

Despite a diagnosis in 1993 by William A. Taylor, M.D., of cervical disc disease, the record does not include any diagnostic tests to support that diagnosis, nor did the doctor indicate that there was such a medical condition in his written statement dated January 26, 1998. There are no objective medical findings of any disorders of the spine as defined in the criteria required by section 1.05 of Appendix 1.... However, Ms. Davis testified that she has had only two seizure episodes since April 1997; one was caused by a prescription error made at the drugstore, and one occurred in February 1998 when she forgot to take her medication. Medical diagnosis of the latter was vasovagal syncope. Examining physicians have made no findings of seizure activity, either major or minor motor seizures, there is no EEG documentation of the same, and they certainly have not been occurring more than once a month despite prescribed treatment, as required by sections 11.02 or 11.03 of Appendix 1. The claimant is being

7) The claimant's impairments do not prevent the claimant from performing her past relevant work.

8) Ms. Davis was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 CFR 404.1520(e)).

(D.I. 5 at 19–20)

On April 14, 2000, the Appeals Council denied plaintiff's request for review. (D.I. 5 at 3–4) Accordingly, "the [ALJ]'s decision stands as a final decision of the Commissioner of Social Security in [the] case." (*Id.*) Plaintiff now seeks review of this final decision from this court pursuant to 42 U.S.C. § 405(g).

## III. FACTS EVINCED AT THE ADMINISTRATIVE LAW HEARING

Plaintiff was born on July 11, 1934. (D.I. 5 at 45) Due to repeated seizures and passing out, plaintiff only attended school through the eighth grade. (D.I. 5 at 46)

treated with medication for high blood pressure, but there is no diagnostic evidence of any heart failure or ischemic heart disease as required by sections 4.02 and 4.04 via section 4.03 of Appendix 1. Ms. Davis' history of migraine syndrome with headache pain, and chronic neck and back pain cannot be evaluated under any specific section of Appendix 1. Nor does the combination of the claimant's impairments impose such functional limitations as to equal in severity any section of Appendix 1. Disability cannot, therefore, by established under § 405 .1520(d).

(D.I. 5 at 12–13) (internal citations omitted)

2. The ALJ noted the following with respect to credibility:

Ms. Davis' testimony was inconsistent as to the amount that she could lift, first stating that she could lift twenty pounds off of the floor without trouble, but then saying that lifting an eight-pound bottle of milk caused her difficulty.

(D.I. 5 at 14)

Plaintiff worked in the Wilmington Library System from 1969 until 1992. (D.I. 5 at 48) Her duties primarily consisted of putting books away,[3] taking care of the mail and getting sandwiches for meetings. (D.I. 5 at 48–49) When she delivered the mail, she walked one and a half blocks to the post office carrying a crate containing books and mail. (D.I. 5 at 51) Plaintiff testified that the total weight of the crate was approximately 25 – 30 pounds. (*Id.*)

In 1990 plaintiff was transferred from the main library to a branch library. (D.I. 5 at 52) Because the branch library did not have an elevator, plaintiff testified that she was occasionally required to carry 75 pounds of books up two flights of stairs. (D.I. 5 at 53) Plaintiff further testified that this activity was hurting her back and her neck. (*Id.*) During the time she was working at the library she also suffered from migraines about once a week. (D.I. 5 at 56) The combination of back aches and migraines caused her to go home from work at least once a month. (*Id.*)

At the hearing, she testified that a Dr. Gibb told her she was "born with a disk in the lower part of [her] back." (D.I. 5 at 57, 61) She was advised that if she received an operation it could result in her being crippled. (D.I. 5 at 57) Plaintiff has suffered from back pain for most of her life. (D.I. 5 at 58) The pain worsened in 1991 after she reached into the shower to pick up a bucket of water and again in 1994, while moving furniture. (*Id.*) At the time of the hearing, plaintiff was taking Darvocet, Furosenmide, Butald, Cyclobenzaprine and Norvasc to help alleviate some of the symptoms involved with high blood pressure, poor circulation, headaches and general pain. (D.I. 5 at 60)

Plaintiff maintains that during a typical day she can take a shower, get herself dressed, cook and eat meals, and do laundry, all with little pain. (D.I. 5 at 66–69) Furthermore, she can clean her house and run the vacuum for about 15–20 minutes before her back starts to hurt. (D.I. 5 at 66) She is also able to rake leaves for 5–10 minutes and take walks without too much pain. (D.I. 5 at 68–69)

Plaintiff drives about 10–15 miles per week, does light grocery shopping and carries her groceries into the house. (D.I. 5 at 75) She stated that she could not carry an eight pound gallon of milk but that she could lift a twenty pound bag of flour. (D.I. 5 at 75–76) In an unsuccessful attempt to clear up the discrepancy, the following exchange took place:

ALJ: I'm puzzling as [counsel] is over why you say you could lift a twenty pound bag of flour without any difficulty when an eight pound bottle of milk causes you some trouble.

Claimant: I don't know about the—I never picked up the fifty pounds of flour. I picked up five.

Attorney: Your Honor, I don't know if she, if you heard it but she said she was thinking about a five. Okay.

ALJ: Mrs. Davis.

Claimant: Yes.

ALJ: Do you know how much weight you can lift?

Claimant: I tried to pick up a lot, but when I do my back hurts.

ALJ: Do you know in, in pounds approximately how much you could pick up before your back would hurt you?

Claimant: About 15 I guess.

ALJ: And why do you say 15? What do you lift that weighs that much?

---

**3.** When plaintiff was first questioned about the weight of the books she lifted she answered "about 50–75 pounds." After counsel questioned whether a more reasonable estimation of the weight would be about 25 pounds, plaintiff agreed. (D.I. 5 at 49–50)

Claimant: I don't know.

ALJ: That's just an—

Claimant: I haven't, I haven't weighed it.

ALJ: You haven't what?

Claimant: I haven't never weighed nothing to—

ALJ: Okay. Go ahead, Counsel.

(D.I. 5 at 76)

At the hearing, the ALJ called Bruce Martin ("Martin") as an independent vocational expert. Martin testified that the work plaintiff did for the library would be described as a "library assistant."[4] (D.I. 5 at 86) As a library assistant, lifting more than 20 pounds at a time is normally not required. (*Id.*) Martin also stated that plaintiff's work as a library assistant would not give her skills that were transferable to other jobs. (*Id.*) The ALJ asked no further questions of Martin because he believed the transferability of plaintiff's skills was not relevant, and the only issue was whether plaintiff could do her past work. (*Id.*)

## IV. MEDICAL EVIDENCE

From 1990 to 1992 plaintiff was seen by neurologist, Dr. Michael J. Carunchio, Jr. Throughout periodic visits over the two year period, Dr. Carunchio had "no definitive diagnosis" for plaintiff's periods of unresponsiveness. (D.I. 5 at 222–230) He regulated these periods with a regimen of Dilantin.

On August 20, 1996, plaintiff was examined by Dr. Irwin Lifrak ("Lifrak"). (D.I. 5 at 171) At that time plaintiff reported suffering from seizures as early as age

seven and continuing periodically until 1991. (D.I. 5 at 171A) Plaintiff specifically denied having a seizure since 1991. (*Id.*)

On August 22, 1996, plaintiff was evaluated on a residual physical functional capacity assessment questionnaire. The Disability Determination Services ("DDS") doctor[5] determined plaintiff's condition would "likely preclude heavy work; thus, max[imum] [residual functional capacity] is for medium, nonhazardous work environment." (D.I. 5 at 144) A second questionnaire was completed on September 1, 1996, with similar conclusions. The only limitations on plaintiff were that she should not lift more than 50 pounds occasionally and 25 pounds frequently. (D.I. 5 at 138, 146) The doctors both concluded that she could sit or stand (with normal breaks) for about six hours during an eight-hour workday. (D.I. 5 at 138, 146) They found plaintiff had no postural, manipulative, visual communicative, or environmental limitations, except for concentrated exposure to cold temperatures. (D.I. 5 at 141, 149)

On December 13, 1996 another residual physical functional capacity assessment was performed. (D.I. 5 at 153) This time, the DDS doctor[6] concluded that plaintiff should not lift more than 20 pounds occasionally and 10 pounds frequently. (D.I. 5 at 154) As with the previous two assessments, plaintiff had no other inhibiting limitations. (D.I. 5 at 155–158)

Finally, on January 26, 1998, Dr. William Taylor sent correspondence to plaintiff's attorney, which confirmed that

[plaintiff] suffer[s] from severe migraine syndrome on a daily basis and has a past history of seizures which have been con-

---

4. Specifically, Martin testified that "the work would be described as a library assistant. Come under various names, library attendant, library clerk, but at any rate this individual performed at semiskilled level, SVP of 3 and medium exertionally." (D.I. 5 at 86)

5. The DDS doctor's signature is illegible.

6. The DDS doctor's signature is illegible.

nected with Dilantin toxicity. As well, she has chronic low back and neck pains which have required treatment over the past several years. I can also confirm that she complained of these problems in the time period of 1994 and 1995 and, in fact, into the present date.

(D.I. 5 at 187)

## V. STANDARD OF REVIEW

"The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, [are] conclusive," and the court will set aside the Commissioner's denial of plaintiff's claim only if it is "unsupported by substantial evidence." 42 U.S.C. § 405(g); 5 U.S.C. § 706(2)(E) (1999); *see Monsour Med. Ctr. v. Heckler,* 806 F.2d 1185, 1190 (3d Cir.1986). As the Supreme Court has held,

"substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Accordingly, it "must do more than create a suspicion of the existence of the fact to be established.... It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury."

*Universal Camera Corp. v. NLRB,* 340 U.S. 474, 477, 71 S.Ct. 456, 95 L.Ed. 456 (1951) (quoting *NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300, 59 S.Ct. 501, 83 L.Ed. 660 (1939)).

The Supreme Court also has embraced this standard as the appropriate standard for determining the availability of summary judgment pursuant to Fed.R.Civ.P. 56:

The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

Petitioners suggest, and we agree, that this standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict. If reasonable minds could differ as to the import of the evidence, however, a verdict should not be directed.

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250–51, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (internal citations omitted). Thus, in the context of judicial review under § 405(g),

"[a] single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion."

*Brewster v. Heckler,* 786 F.2d 581, 584 (3d Cir.1986) (quoting *Kent v. Schweiker,* 710 F.2d 110, 114 (3d Cir.1983)). Where, for example, the countervailing evidence consists primarily of the claimant's subjective complaints of disabling pain, the Commissioner "must consider the subjective pain and specify his reasons for rejecting these claims and support his conclusion with medical evidence in the record." *Matullo v. Bowen,* 926 F.2d 240, 245 (3d Cir.1990).

## VI. DISCUSSION

### A. Standards for Determining Disability

Congress enacted the Supplemental Security Income Program in 1972 "to assist

'individuals who have attained age 65 or are blind or disabled' by setting a guaranteed minimum income level for such persons." *Sullivan v. Zebley,* 493 U.S. 521, 524, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990) (quoting 42 U.S.C. § 1381). Disability is defined in § 1382c(a)(3) as follows:

(A) Except as provided in subparagraph (C), an individual shall be considered to be disabled for purposes of this subchapter if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.

(B) For purposes of subparagraph (A), an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.

 &ast; &ast; &ast; &ast; &ast; &ast;

(D) For purposes of this paragraph, a physical or mental impairment is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

42 U.S.C. § 1382c(a)(3). Governing regulations set forth a five-step test for determining whether a claimant falls within this definition:

The first two steps involve threshold determinations that the claimant is not

presently working and has an impairment which is of the required duration and which significantly limits his ability to work. *See* 20 C.F.R. §§ 416.920(a)–(c) (1989). In the third step, the medical evidence of the claimant's impairment is compared to a list of impairments presumed severe enough to preclude any gainful work. *See* 20 C.F.R. pt. 404, subst. P, App. 1 (pt. A) (1989). If the claimant's impairment matches or is "equal" to one of the listed impairments, he qualifies for benefits without further inquiry. [20 C.F.R.] § 416.920(d). If the claimant cannot qualify under the listings, the analysis proceeds to the fourth and fifth steps. At these steps, the inquiry is whether the claimant can do his own past work or any other work that exists in the national economy, in view of his age, education, and work experience. If the claimant cannot do his past work or other work, he qualifies for benefits. [20 C.F.R.] §§ 416.920(e) and (f).

*Sullivan,* 493 U.S. at 525, 110 S.Ct. 885.

■■■ The determination whether a claimant can perform other work may be based on the administrative rulemaking tables provided in the Department of Health and Human Services Regulations ("the grids"). *See Jesurum v. Sec'y of Health & Human Servs.,* 48 F.3d 114, 117 (3d Cir.1995) (citing *Heckler v. Campbell,* 461 U.S. 458, 468–70, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983)). The grids require the ALJ to take into consideration the claimant's age, educational level, previous work experience, and residual functional capacity. *See* 20 C.F.R. § 404, subst. P, app. 2 (1999). If the claimant suffers from significant non-exertional limitations, such as pain or psychological difficulties,[7] the ALJ

---

**7.** The regulations list the following examples of non-exertional limitations:

(i) You have difficulty functioning because you are nervous, anxious, or depressed;

must determine, based on the evidence in the record, whether these non-exertional limitations further limit the claimant's ability to work. *See* 20 C.F.R. § 404.1569a(c)–(d). If they do not, the grids may still be used. If, however, the claimant's non-exertional limitations are substantial, the ALJ must use the grids as a "framework" only. *See* 20 C.F.R. § 404, subst. P, app. 2, § 200(d)–(e). In such a case, or if a claimant's condition does not match the definition provided in the grids, determination of whether the claimant can work is ordinarily made with the assistance of a vocational specialist. *See Santise v. Schweiker,* 676 F.2d 925, 935 (3d Cir.1982).

## B. Application of the Five–Step Test

In the present case, the first three steps of the five-part test to determine whether a person is disabled are not at issue: (1) plaintiff is not working; (2) plaintiff's impairment has lasted more than twelve months; and (3) plaintiff does not have an impairment equal to or meeting one listed in the regulations. The issue in this case concerns the fourth and fifth steps: whether plaintiff is able to perform her past relevant work and whether she can perform other work existing in the national economy. *See Sykes v. Apfel,* 228 F.3d 259, 263 (3d Cir.2000); *Mason v. Shalala,* 994 F.2d 1058, 1064 (3d Cir.1993).

■ In the context of this five-step test, plaintiff had the burden of demonstrating that she was unable to engage in her past

(ii) You have difficulty maintaining attention or concentrating;
(iii) You have difficulty understanding or remembering detailed instructions;
(iv) You have difficulty in seeing or hearing;
(v) You have difficulty tolerating some physical feature(s) of certain work settings, e.g., you cannot tolerate dust or fumes; or
(vi) You have difficulty performing the manipulative or postural functions of some

relevant work. *See* 42 U.S.C. §§ 416(I), 423(d)(1)(A); *Morales v. Apfel,* 225 F.3d 310, 316 (3d Cir.2000). After considering the plaintiff's testimony, medical records, and vocational expert testimony, the ALJ found that plaintiff failed to meet this burden.

Plaintiff argues that "[t]he ALJ failed to give adequate weight to the testimony of the claimant and the report of the treating physician." (D.I. 12 at 11) Plaintiff further argues that the ALJ did not properly identify plaintiff's past relevant work. (D.I. 15 at 5) The court disagrees and holds that the ALJ's determination was supported by substantial evidence.

### 1. Plaintiff's Credibility

■ The ALJ supported his determination that the plaintiff was not credible by pointing to inconsistencies and contradictions in her testimony and the record. For example, plaintiff gave inconsistent testimony regarding how much she could lift. She testified that she had no difficulty lifting twenty pounds off the floor, but lifting an eight pound bottle of milk caused her trouble. (D.I. 5 at 75) Plaintiff also gave inconsistent testimony regarding her history of seizures. She testified that before April 1997, it had been years since her last seizure. She later testified that in 1996, she had seizures on a monthly basis. (*Id.* at 81) The ALJ noted these discrepancies and specifically labeled her testimony as not credible.[8] (*Id.* at 13–18) Thus, to

work such as reaching, handling, stooping, climbing, crawling, or crouching.
20 C.F.R. § 404.1569a(c).

8. Plaintiff's counsel points to the inconsistent testimony as evidence that plaintiff has a learning disability and that the ALJ should have ordered a psychological examination. Plaintiff's counsel told the SSA that his client "probably has learning disabilities," in her Request for Reconsideration and the Request for Hearing by ALJ. (D.I. 5 at 96, 102) How-

the extent the ALJ considered plaintiff's credibility in reaching his conclusions, the court finds no error.

### 2. Report of Plaintiff's Treating Physician

 Second, plaintiff's contention that the ALJ failed to give adequate weight to the report of the treating physician is misplaced. Treating physicians' reports should be accorded great weight, especially "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Morales,* 225 F.3d at 317 (quoting *Rocco v. Heckler,* 826 F.2d 1348, 1350 (3d Cir.1987)); 20 C.F.R. § 404.1527(d)(2) (providing for controlling weight where treating physician opinion is well-supported by medical evidence and not inconsistent with other substantial evidence in the record). An ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided. *See Newhouse v. Heckler,* 753 F.2d 283, 286 (3d Cir.1985). Where the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason." *Morales,* 225 F.3d at 317 (quoting *Mason,* 994 F.2d at 1066). In choosing to reject the treating physician's assessment, an ALJ may not make "speculative inferences from medical reports" and may reject "a treating physician's opinion outright only on the basis of contradictory medical evidence" and not due to his or her own credibility judgments, speculation or lay opinion. *Id.* (quoting *Plummer,* 186 F.3d at 429).

 In the case at bar, the only medical report of record from plaintiff's treating physician, Dr. Taylor, indicates that plaintiff suffers daily migraines, has chronic low neck and back pain, and has a history of seizures. (D.I. 5 at 187) In his two paragraph report, Dr. Taylor merely repeats subject complaints, which must be supported by objective medical evidence. *See* 20 C.F.R. § 404.1529; *Hartranft v. Apfel,* 181 F.3d 358, 362 (3d Cir.1999). Without any supporting medical evidence of record, the ALJ could not improperly reject evidence that did not exist. Thus, any argument that the ALJ improperly rejected the primary physician's report is without merit.

### 3. Identification of Plaintiff's Prior Work Experience

Plaintiff argues that the vocational expert erroneously labeled the plaintiff as a "library assistant," and that the case should be remanded so the vocational expert can pick a different job title for the plaintiff or explain why he chose "library assistant." (D.I. 12 at 17) Plaintiff notes that the Dictionary of Occupational Titles defines a "library assistant" as someone with supervisory duties. Plaintiff contends that her position was more consistent with the definition of a "page." By hearing only an incorrect description of plaintiff's past work experience, plaintiff argues that the ALJ's decision cannot be said to be based upon substantial evidence.

 Plaintiff's argument is without merit. First, the vocational expert testified that plaintiff's past position goes by various names other than "library assistant." Second, no one dictionary serves as

ever plaintiff submitted no additional evidence to support this contention, for which she has the burden of proof.

the binding authority on job descriptions. *See* 20 C.F.R. § 404.1566(d). Finally, regardless of whether the ALJ had the correct job title before him, he had sufficient evidence to find that plaintiff retained the residual functional capacity to perform the functional demands and job duties of plaintiff's particular past job, or the functional demands of the occupation as generally required by employers throughout the national economy. *See Sykes,* 228 F.3d at 263. The vocational expert testified that plaintiff's past relevant work was performed at the light exertional level. (D.I. 5 at 86) Based on a complete review of the evidence, including plaintiff's own description of her past work, the ALJ found that plaintiff was capable of performing light exertional work. (*Id.* at 18, 20) The court holds that such a finding was supported by substantial evidence.

## VI. CONCLUSION

For the reasons stated above, the court shall grant the Commissioner's motion and deny plaintiff's motion. An appropriate order shall issue.