**Margaret M. SMITH, Appellant**

v.

**COMMISSIONER OF SOCIAL SECURITY.**

No. 05–3533.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) April 21, 2006.

Opinion filed May 1, 2006.

Abraham S. Alter, Langton & Alter, Rahway, NJ, for Appellant.

Social Security Administration Office of General Counsel—Region II, New York, NY, for Commissioner of Social Security.

Before SLOVITER and AMBRO, Circuit Judges, and DUBOIS,* District Judge.

## OPINION

AMBRO, Circuit Judge

Margaret Smith ("Smith") appeals from an order of the United States District Court for District of New Jersey affirming the Commissioner of Social Security's ("Commissioner") decision denying her application for disability insurance benefits. Smith asserts that the decision of the Administrative Law Judge ("ALJ") and the District Court's affirmation of that decision are unsupported by substantial evidence and should therefore be reversed and remanded for a new hearing. For the reasons that follow, we affirm the order of the District Court.

### I. Facts and Procedural History

#### A.

Smith was fifty-eight years old as of the date of the ALJ's decision. She has a

---

* Honorable Jan E. DuBois, Senior District Judge for the Eastern District of Pennsylvania, sitting by designation.

tenth-grade education. Her last job as a cafeteria attendant entailed operating a cash register, stocking a salad bar and counters, mopping floors, and gathering boxes.

Smith filed an application for disability insurance benefits on August 8, 1996, alleging disability as of November 12, 1995, resulting from severe medical impairments, including orthopedic and neurological conditions. The Commissioner denied her application initially and again on reconsideration. Smith requested and was granted a hearing held on January 7, 1998 before ALJ Michael H. Noorigian. The ALJ found that she was not entitled to a period of disability or disability insurance benefits under §§ 216(i) and 223 of the Social Security Act ("SSA"). Smith's subsequent request for review by the Social Security Appeals Council ("Appeals Council") was denied. However, on appeal to the District Court, Smith obtained an order to remand to the Appeals Council on January 10, 2003. In turn, the Appeals Council remanded the matter back to the ALJ for a new hearing.

During the pendency of the request for remand, Smith filed a second application for disability insurance benefits in March 2000, alleging that she had been disabled since March 26, 1998. The Commissioner agreed that Smith was disabled, though the determination was her disability began December 1, 2000. The Appeals Council sustained this ruling. As a result, Smith argued on remand to the ALJ in the case now before us that she also was disabled between November 12, 1995 and December 1, 2000. The ALJ once again issued an unfavorable decision, finding that Smith was not entitled to disability insurance benefits for the period before December 1, 2000. Smith's request for review by the Appeals Council was denied.

Smith again appealed to the District Court. This time it affirmed the denial of benefits. This appeal followed.

## B.

Smith offered the following evidence in her second hearing before the ALJ.

### Dr. Albert Mylod

Dr. Mylod, a board certified orthopedic surgeon and an expert on orthopedic disabilities, testified at Smith's behest at the ALJ hearing on January 7, 1998. Dr. Mylod has testified at more than two thousand hearings as both a medical expert and medical advisor. He had not examined Smith, but based his conclusions on her medical records and her subjective complaints. Dr. Mylod opined that Smith suffered from spondylitic ridges, or a degenerative change indenting the spinal cord. Dr. Mylod further opined that Smith had classic signs of fibromyalgia, as indicated by her sleep disturbances, crying, and fifteen pound weight loss. Despite Smith's impairments, the doctor stated that she did not satisfy any medical listing in the Listing of Impairments. He did testify, however, that Smith would have trouble walking more than one and a half blocks, standing still for more than fifteen minutes, and sitting for six hours. Dr. Mylod also reported that he believed that the type of pain described by Smith was supported by the record.

### Dr. David Brown

Smith was examined by Dr. Brown in September 1996. He reported that Smith suffered tenderness on very light touch over certain areas of her back. According to Dr. Brown, Smith had full range of motion of the shoulders, elbows, wrists, hips, knees, and ankles.

### Dr. Joseph Schullman

Smith was in the care of Dr. Schullman from November 1995 through February

1996. He recommended physical therapy for Smith, who told him that she felt up to sixty-five percent better (but that she had both good and bad days). Dr. Schullman's records indicated that Smith was to return to moderate duty work February 21, 1996. According to his report, Smith did return to work for three hours a day, but was in too much pain and too upset due to her mother's illness to continue.

### Dr. Gregory Gallick

Dr. Gallick, an orthopedic surgeon, evaluated Smith multiple times between March 1996 and August 1996. Upon meeting with Smith several times over approximately two months and noticing only minimal improvement, Dr. Gallick told her that she might have to learn to live with her problems. He also asserted that he was unsure of how much help physical therapy or surgical intervention would be, as her condition may be permanent. Dr. Gallick maintains that Smith's medical condition is very serious and that she is completely unable to do even light duties for more than one or two hours.

### II. Standard of Review

On appeal from the District Court's decision affirming the Commissioner's denial of disability insurance benefits, our review of legal issues is plenary.[1] *Sykes v. Apfel,* 228 F.3d 259, 262 (3d Cir.2000). We review the ALJ's factual findings only to determine whether they are supported by substantial evidence. *Knepp v. Apfel,* 204 F.3d 78, 83 (3d Cir.2000).

"Substantial evidence has been defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate.'" *Plummer v. Apfel,* 186 F.3d 422, 427 (3d Cir. 1999) (quoting *Ventura v. Shalala,* 55 F.3d

900, 901 (3d Cir.1995)). "Where the ALJ's findings of facts are supported by substantial evidence, we are bound by those facts, even if we would have decided the factual inquiry differently." *Fargnoli v. Massanari,* 247 F.3d 34, 38 (3d Cir.2001). Thus, the issue we must decide is whether the ALJ's decision that Smith was not disabled, and thus not entitled to disability insurance benefits, is supported by substantial evidence.

### III. Discussion

#### A.

Eligibility for disability insurance benefits under the SSA is conditioned on compliance with all relevant requirements of the statute. "[A] disability is established where the claimant demonstrates that there is some medically determinable basis for an impairment that prevents him from engaging in any substantial gainful activity for a statutory twelve-month period." *Id.* at 38–39 (internal quotation marks and citations omitted); *see also* 42 U.S.C. § 423(d)(1)(A). A "medically determinable" impairment is one that results from anatomical, physiological, or psychological abnormalities demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). The SSA further explains that an individual will be determined to be disabled

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial work which exists in the national economy. . . .

*Id.* § 423(d)(2)(A).

In order to make that determination, the Commissioner follows a five-step sequen-

---

1. The District Court had subject matter jurisdiction pursuant to 42 U.S.C. § 405(g). We

exercise appellate jurisdiction pursuant to 28 U.S.C. § 1291.

tial procedure for evaluating disability claims. *See* 20 C.F.R. § 404.1520. First, she considers whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled regardless of her medical condition. 20 C.F.R. § 404.1520(b). If not, the Commissioner goes on to consider whether the claimant is suffering from a severe impairment or combination of impairments that significantly limits her physical or mental ability to do basic activities. 20 C.F.R. § 404.1520(a)(4)(ii) and (c). If the answer is yes, we go to step three: whether the claimant has an impairment that meets or equals a list of impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1, which are presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(a)(4)(iii) and (d).

If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. In the former, the ALJ is required to consider whether the claimant retains the residual functional capacity to perform her past work. 20 C.F.R. § 404.1520(a)(4)(iv) and (f). The claimant bears the burden here. *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 118 (3d Cir.2000).

If the claimant is unable to resume her former occupation, the evaluation moves to the final step. At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(a)(4)(v) and (g). The Commissioner "must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity." *Burnett*, 220 F.3d at 118.

**B.**

Smith claims the ALJ erred at step four in determining that she retained the residual functional capacity to perform her past relevant work because his findings were not supported by substantial evidence. Specifically, Smith argues that the ALJ failed to: (1) follow our Court's holding in *Cotter v. Harris*, 642 F.2d 700 (3d Cir. 1981), by neglecting to specify the reasons for the rejection of Dr. Mylod's testimony, (2) accord the proper "enhanced weight" to Dr. Gallick's opinion, and (3) consider all of her impairments, specifically the effect of her nervousness and anxiety on her residual functional capacity. We address each of these arguments in turn.

### 1. ALJ's treatment of Dr. Mylod's Testimony

■ As noted above, Smith contends that the ALJ failed to give reasons for giving no weight to Dr. Mylod's testimony. When determining a claimant's residual functional capacity, the ALJ must consider all relevant evidence. *Fargnoli*, 247 F.3d at 41; *see also* 20 C.F.R. §§ 404.1527(e)(2), 404.1545(a), 404.1546. This includes "medical records, observations made during formal medical examinations, descriptions of limitations by the claimant and others, and observations of the claimant's limitations by others." *Fargnoli*, 247 F.3d at 41.

In addition, the ALJ must give "a clear and satisfactory explication of the basis on which [the residual functional capacity] rests." *Cotter*, 642 F.2d at 704. In *Cotter*, we explained that

[i]n our view an examiner's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which ultimate factual conclusions are based, so that a reviewing court may know the

basis for the decision. This is necessary so that the court may properly exercise its responsibility under 42 U.S.C. § 405(g) to determine if the Secretary's decision is supported by substantial evidence.

*Id.* at 705 (quoting *Baerga v. Richardson,* 500 F.2d 309, 312 (3d Cir.1974), *cert. denied,* 420 U.S. 931, 95 S.Ct. 1133, 43 L.Ed.2d 403 (1975)). *Cotter* requires that the "ALJ not only [give] an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Id.* If the "ALJ fails to identify the evidence he or she rejects and the reason for its rejection," we are unable to conduct a substantial evidence review. *Walton v. Halter,* 243 F.3d 703, 710 (3d Cir.2001).

Dr. Mylod is a non-examining expert who based his testimony on Smith's medical reports, her subjective complaints, and an examining physician's (Dr. Gallick's) opinion that Smith is unable to perform light duties. Contrary to Smith's argument, the ALJ does set forth the following reasons for giving no weight to Dr. Mylod's testimony:

1. First, the ALJ accorded no significance to Dr. Mylod's determination that Smith would have trouble walking more than one and a half blocks, standing still for more than fifteen minutes, and sitting for six hours, because the doctor only reached that conclusion after he took into account Smith's *subjective* complaints. Based solely on the *objective* evidence, Dr. Mylod stated that Smith would be able to sit close to six hours in an eight-hour workday without pain if she did not move a lot.

2. Second, the ALJ pointed to Smith's failure to submit an explanation for what Dr. Gallick meant by light duty work. The record indicates that there was confusion about the doctor's understanding of "light work," as that term has one definition in the Social Security context and another in the worker's compensation context. When confronted with this problem, Dr. Mylod testified that the resolution of this issue would affect his opinion. Smith's attorney agreed to obtain clarifying information from Dr. Gallick, but ultimately failed to do so.

3. Next, the ALJ rejected Smith's contention that Dr. Mylod's testimony should be afforded enhanced weight since he had been used in the past as a medical expert for the SSA. According to the ALJ, this was because Dr. Mylod was not appearing as an impartial medical expert in the proceedings here. Instead, he was serving as Smith's witness.

4. Finally, the ALJ relied heavily on the reports from Smith's treating physician, Dr. Schullman, and consultative examiner, Dr. Brown, which demonstrated a general absence of any clinical abnormalities. Dr. Schullman's report indicated Smith was improving with therapy and that he expected Smith to be able to return to moderate work in February 1996. Although Dr. Gallick[2] reported that Smith suffered from muscle spasms and tenderness,

---

**2.** Dr. Gallick's testimony is consistent with Dr. Mylod's testimony in that both physicians agree that Smith cannot perform light work. The ALJ noted, however, that his discrediting of Dr. Gallick's testimony was further reason to give no weight to Dr. Mylod's testimony. *Cf.* 20 C.F.R. § 404.1527(d)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.").

neither of these findings is seen in the reports of the other doctors.

Therefore, the ALJ did set forth properly "a clear and satisfactory explication of the basis on which [his rejection of Dr. Mylod's testimony] rest[ed]," as mandated by our decision in *Cotter*, 642 F.2d at 704.

### 2. *ALJ's treatment of Dr. Gallick's Testimony*

Smith claims that the ALJ failed to accord "enhanced weight" to her treating physician's opinion. We have made clear that treating physicians' reports should be accorded great weight, especially "when their opinions reflect expert judgment based on continuing observation of the [claimant]'s condition over a prolonged period of time." *Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir.1987); 20 C.F.R. § 404.1527(d)(2) (providing for controlling weight where treating physician opinion is well supported by medical evidence and not inconsistent with other substantial evidence on the record). Indeed, an ALJ "may reject a treating physician's opinion outright only on the basis of contradictory medical evidence." *Plummer*, 186 F.3d at 429.

■ The record reveals that the ALJ gave no weight to Dr. Gallick's opinion that Smith was "disabled." The ALJ was not required to accept that conclusion because the determination whether Smith is disabled is an ultimate issue reserved to the Commissioner in the first instance (and later the reviewing panels). 20 C.F.R. § 404.1527(e); Social Security Ruling 96–6p. Indeed, unlike the medical opinion of a treating physician regarding the nature and severity of an individual's impairments, which may be entitled to controlling weight, no special significance is given to the source of an opinion on the ultimate outcome. 20 C.F.R. § 404.1527(e)(3).

■ The ALJ then considered Dr. Gallick's testimony concerning the nature and severity of Smith's impairments. As noted above, while these findings may be entitled to controlling weight, they may also be rejected on the basis of countervailing or inconsistent evidence. *Plummer*, 186 F.3d at 429. Here, the ALJ rejected Dr. Gallick's testimony to the extent that it was inconsistent with the reports of Drs. Schullman and Brown. As the ALJ emphasized, notably absent from both doctors' reports was mention of any clinical or neurological abnormalities. We cannot conclude that the ALJ erred in rejecting Dr. Gallick's testimony, as it was inconsistent with objective medical evidence in the record.

### 3. *ALJ's Treatment of Smith's Nervousness and Anxiety*

■ Smith argues that the ALJ did not consider the effect of her nervousness and anxiety on her residual functional capacity. As stated previously, Smith was found to be disabled as of December 1, 2000. The basis for that decision was Smith's satisfaction of the requirements of Listing 12.06A and 12.06B, Anxiety Related Disorders. Smith contends that the ALJ did not consider properly her psychiatric symptoms prior to December 1, 2000. However, the ALJ correctly determined that there was no evidence of mental impairment in the record in his review of Smith's first application.

Smith's own testimony clearly showed that she did not believe herself to be disabled due to any anxiety or depression during the relevant period here. During her first hearing in January 1998, Smith testified as follows:

**Smith's Attorney:** "Have you had any problems with depression or anxiety since the car accident?

**Smith:** No. I do get upset, I do cry sometimes when I can't do things I used to do."

At her subsequent hearing in January 2004, Smith's attorney declined to take testimony from her on the extent of any mental limitations for the period from 1995 through December 2000, instead relying on evidence already in the record. That evidence noted no severe mental impairment. Moreover, contemporaneous medical records showed no evidence of treatment of any mental condition until December of 2000, when Dr. Chun, Smith's family physician, placed her on Paxil. Based on an October 2001 psychological consultative examination and reports from Dr. Chun, two state psychiatrists who reviewed the medical record agreed that the onset of Smith's disability due to her anxiety disorder was December 2000, but not before. Because there is no evidence of mental impairment on the record prior to December 2000, we believe the ALJ properly considered all of Smith's impairments.

## C.

▆ We now turn to the ALJ's conclusion that Smith retained the residual functional capacity to perform the extertional demands of a wide range of light work she previously performed. The ALJ relied on the medical evidence of treating, examining, and consultive physicians to reach that determination. Among other things, the ALJ emphasized the absence of clinical abnormalities in Dr. Brown's and Dr.

Schullman's reports. In addition, on remand the Disability Determination Service assessed Smith's ability to perform essentially a full range of light work.[3] These reports, as well as the objective evidence provided by Dr. Mylod, make clear that the ALJ's finding that Smith retained the residual functional capacity to perform the demands of light work is supported by substantial evidence.

After determining that Smith had the residual functional capacity to perform light work, the ALJ reviewed the demands of Smith's relevant past work to determine whether she could still meet those demands. 20 C.F.R. §§ 404.1520(a)(4)(iv) and (f), 404.1567(b). Under the Commissioner's regulations, a claimant will be found not disabled when she retains the residual functional capacity to perform the actual functional demands and job duties of a particular past relevant job or the functional demands and job duties of the occupation as generally required by employers throughout the national economy. Social Security Ruling 82–61. Based on Smith's testimony, the ALJ concluded that Smith's past relevant work performed was that of a cafeteria attendant. He then referenced the U.S. Department of Labor's Dictionary of Occupational Titles ("DOT"). According to the ALJ, the "salient functions of light work"[4] were the functions required by the DOT description of work as a cafeteria attendant. Smith does not dispute the ALJ's ruling that her past work is defined as light work. Thus, the

---

[3] A Residual Physical Functional Capacity Assessment was added to the record on remand. That Assessment was reviewed by Medical Consultant Burton Gillette, M.D., on July 31, 2001, and it also supports the ALJ's conclusion that Smith has the ability to perform a full range of light work. Specifically, the Assessment indicates, *inter alia*, that Smith has the ability to lift fifteen pounds frequently and thirty pounds occasionally, to sit or stand for about six hours in an eight-hour workday,

and the severity of the symptoms declared by Smith are disproportionate to that expected from the medical evidence.

[4] DOT § 311.677–010 defines "light work" as that which requires "up to twenty pounds of force occasionally ... and/or up to ten pounds of force frequently ... and/or a negligible amount of force constantly."

ALJ's finding that Smith retains the residual functional capacity to perform her past relevant work is supported by substantial evidence.

\* \* \* \* \*

For these reasons, we conclude that substantial evidence exists to support the Commissioner's denial of disability insurance benefits. We thus affirm the order of the District Court.