**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-3381
_____

Keisha Marie Sutherland,

Appellant

v.

Commissioner Social Security

On Appeal from the United States District Court
for the District of Delaware
(District Court No.:  1-16-cv-00184)
District Court Judge:  Honorable Leonard P. Stark

Argued on July 1, 2019

(Opinion filed September 27, 2019)

Before:  McKEE, PORTER and RENDELL, <u>Circuit Judges</u>

Benjamin R. Barnett
Dechert
2929 Arch Street
18th Floor, Cira Centre
Philadelphia, PA   19104

Jane Tomic  **(Argued)**
University of Pennsylvania
School of Law
3400 Chestnut street
Philadelphia, PA   19104

Christopher Trueax
Pepper Hamilton
3000 Two Logan Square
18th and Arch Streets
Philadelphia, PA   19103

Counsel for Appellant

Heather Benderson
Gregg W. Marsano **(Argued)**
Social Security Administration
Office of General Counsel SSA/PGC/ Region III
300 Spring Garden Street
6th Floor
P. O. Box 41777
Philadelphia, PA   19123

Counsel for Appellee

_____

O P I N I O N*
_____


**RENDELL**, Circuit Judge,

Keisha Sutherland was diagnosed with bipolar disorder in 2007.  She twice

applied for social security benefits—once in 2007 and once in 2010.  The petitions were

eventually consolidated, and the Social Security Administration denied her application.

After a review of the record, focusing specifically on the closed period beginning in 2007

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

through November 2008, we conclude that the Administration's decision is supported by substantial evidence. We will thus affirm.

## I.

In July 2007, Sutherland was hospitalized after the police found her wandering outside her home, incoherent and partially clothed.[1] After she was discharged, Sutherland began psychiatric treatment with Dr. Habibah E. Mosley. Dr. Mosley diagnosed Sutherland with bipolar disorder and assessed her a Global Assessment of Functioning ("GAF") score of 50, which suggests "serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." J.A. 30 (quoting *Diagnostic and Statistical Manual of Mental Disorders* (DSM-IV-TR) 34 (4th Ed. 2000)). Dr. Mosley prescribed medication to treat Sutherland's symptoms. Sutherland subsequently applied for social security disability benefits and supplemental security income.

As a result of the application, Dr. Frederick Kurz conducted a consultative examination of Sutherland in October 2007. Dr. Kurz concluded that Sutherland had no express indications of depression or anxiety and assessed her a GAF score of 65, suggesting only mild impairment. He noted that if Sutherland "consistently took her medication," her symptoms could be "stabilized and controlled." J.A. 32. Dr. Douglas Fugate, a state agency psychologist, also reviewed Sutherland's records, but did not

---

[1] The facts presented and the characterizations of the physicians' reports and opinions are primarily taken from the two District Court opinions in this matter. *See* J.A. 1–21; J.A. 28–40.

3

personally examine Sutherland. Dr. Fugate concluded that Sutherland had "mild restriction of activities of daily living, moderate difficulties in maintaining concentration, persistence, or pace, and one or two episodes of decompensation for an extended duration." *Id.* He also identified a "history of hospitalizations and noncompliance in taking her medication," but ultimately reached the same conclusion as Dr. Kurz and assessed her a GAF score of 65. *Id.*

Sutherland continued to see Dr. Mosley through 2008. At several points, Dr. Mosley adjusted Sutherland's medication dosages to properly treat her bipolar disorder. But later that year, Sutherland suffered a relapse and reported that she stopped taking her medication. She was again hospitalized. Following that period of hospitalization, Dr. Mosley reported that Sutherland was "doing better" and adjusted her medication. J.A. 31. Dr. Mosley then completed a mental impairment questionnaire for the purposes of Sutherland's application. She concluded that Sutherland responded well to treatment, that she was limited but satisfactory in her ability to remember work-like procedures and maintain regular attendance, and that she was seriously limited in but not precluded from understanding simple instructions, maintaining work routines, and performing at a consistence pace. She further concluded that Sutherland was "moderately limited in performing the activities of daily living; would have moderate difficulties in maintaining social functioning and in maintaining concentration persistence, or pace; and had three, two-week episodes of decompensation within a twelve-month period." J.A. 31–32. She also concluded that Sutherland is "markedly limited and unable to meet competitive standards in accepting instructions and responding appropriately to criticism from

4

supervisors, getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, and dealing with normal work stress." J.A. 31. Dr. Mosley assessed her a GAF score of 40.

After review of Sutherland's application and her medical records, the ALJ concluded that, despite her diagnosis of bipolar disorder, Sutherland had the residual functional capacity ("RFC") "to perform simple, unskilled light work . . . [that] required no more than occasional interaction with supervisors, co-workers, and the general public." J.A. 35. The Appeals Council affirmed. On review, the United States District Court for the District of Delaware granted Sutherland's motion for summary judgment and remanded for further proceedings. It determined that "the ALJ pointed to no medical evidence that would contradict Dr. Mosley's December 2008 conclusion that [Sutherland's] GAF was 40 . . . . If the conclusion was based on the ALJ's own medical judgment (as it appears to have been), that would be improper." J.A. 40. Because the ALJ "articulated no viable basis to discount Dr. Mosley's opinion," the District Court remanded to the Administration to provide further explanation. J.A. 40.

On remand, the Appeals Council instructed the ALJ to: (1) address Dr. Mosley's GAF scores of 40 and 50 and the reasons for discrediting those opinions; (2) evaluate the weight given to Dr. Mosley's opinion, and whether contradictory medical evidence exists; and (3) further evaluate the GAF scores. The Appeals Council also instructed that, if warranted, the ALJ should update the medical evidence on the record, further consider Sutherland's RFC, and obtain supplemental evidence from a vocational expert. At the time of the remand, Sutherland had a second ongoing application for disability benefits

5

beginning in 2009. That was consolidated with the original petition and remanded to the ALJ to review Sutherland's claim from 2007 through 2014. The closed period of the initial application from 2007 through the hospitalization in November 2008, however, was of particular importance on remand.

After a hearing and testimony from Sutherland, the ALJ denied the consolidated application. It first evaluated Dr. Mosley's opinion of disability and declined to give it controlling weight. First, there were virtually no treatment records from Dr. Mosley. Thus, Dr. Mosley's opinion lacked corroborating outpatient records to confirm the treatment relationship between Dr. Mosley and Sutherland. Specifically, the ALJ only had from Dr. Mosley an August 2007 psychological evaluation, prescriptions from 2007 and 2008, the November 20, 2008 treatment notes, and the December 2008 medical questionnaire. The notes from August 2007 document a perfect score on a mini-mental status examination. The notes from the November 2008 examination, which immediately preceded the issuance of Dr. Mosley's disability opinion, recorded that she was doing better after the hospitalization and had a clear and organized thought process, an appropriate affect, and no delusions or hallucinations. While Sutherland's attention and concentration were impaired, her mental status during the periods of hospitalization improved when she resumed medication. This was also weighed against the 2007 Dr. Kurz report, which found no mental status deficiencies and only mild limitations in understanding simple instructions.

As to Dr. Mosley's assessment of a GAF score of 40, the ALJ concluded that it should be given some weight as of November 2008 because Sutherland had recently been

6

discharged from inpatient treatment. And although during this period she received GAF scores of 15 and 14, those scores were likely reasonable as they were assessed during her November 2008 hospitalization. The ALJ further noted that the GAF score of 14 may be a clerical error, because the hospital would not have given Sutherland a lower score than her initial score when it also discharged her as stable.

Because the appeal was consolidated, the ALJ considered additional medical evidence from 2010 to 2014. Dr. De Yanez treated Sutherland and assessed her a GAF score of 65 in 2011, and 60 in 2012. On a medical questionnaire form, Dr. De Yanez concluded that Sutherland's bipolar disorder could be managed with medication. Dr. De Yanez's outlook for Sutherland was more positive than others, concluding that Sutherland had the ability to respond to detailed instructions and perform complex tasks. The ALJ credited Dr. De Yanez's assessment in part but concluded that Sutherland is more limited than Dr. De Yanez found.

Sutherland's most recent treating physicians, Dr. Dupree and therapist Roberts, treated Sutherland beginning in 2012. In a 2014 medical questionnaire, they concluded that Sutherland is unable to work on a full-time basis, keep a schedule, follow verbal and written instructions, and participate in work even with accommodations or modifications. They further noted that Sutherland is unable to work due to the severity of her episodes. The ALJ, after detailing the treatment notes in the record from Dr. Dupree and Roberts, rejected their conclusion because the record did not support the finding that Sutherland could not work in any capacity or that she had suffered from severe episodes since her November 2008 hospitalization. As a result, the ALJ denied the applications for benefits

7

because Sutherland has the ability to perform unskilled work activity with additional limitations.

The Appeals Council affirmed, and Sutherland again petitioned for review in the District Court. It granted summary judgment in favor of the Administration. Sutherland subsequently appealed.

## II.[2]

The Administration reviews applications for disability benefits by conducting a five-step sequential analysis. First, it determines whether the claimant is engaged in substantial gainful activity. *See Brewster v. Heckler*, 786 F.2d 581, 583 (3d Cir. 1986). If the claimant is not, it then determines whether the claimant is suffering from a severe impairment or a combination of impairments that is severe. *Id.* It then reviews a list of impairments that automatically preclude any gainful work. *Id*. at 583–84. If the claimant's impairment is not on the list, it then determines whether the claimant retains the RFC to perform past relevant work, *i.e.*, "that which [the] individual is still able to do despite the limitations caused by his or her impairment(s)." *Fargnoli v. Massanari*, 247 F.3d 34, 40 (3d Cir. 2001) (quoting *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000)). And if he or she cannot return to past work, it then determines whether the impairment precludes adjustment to any available work. *See Brewster*, 786

---

[2] The District Court had jurisdiction pursuant to 42 U.S.C. § 405(g). We have jurisdiction over the District Court's final order pursuant to 28 U.S.C. § 1291.

F.2d at 584. If the claimant is unable to adjust to any available work, they are entitled to benefits.

We review the Administration's final decision under the same standard the District Court applied: substantial evidence. We ask if the decision is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). Substantial evidence requires "more than a [mere] scintilla" but may be less than a preponderance of the evidence. *Tri-state Truck Serv. Inc. v. NLRB*, 616 F.2d 65, 69 (3d Cir. 1980) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). We do not "weigh the evidence or substitute [our] conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992). "A single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983).

## III.

### A. The ALJ's decision is supported by substantial evidence.

Sutherland urges that the Administration's decision is not supported by substantial evidence and that we should award her benefits. She specifically points to the closed period of the original application, *i.e.*, the 2007–2008 period of disability between the initial application and the subsequent 2009 ALJ decision. Sutherland argues that the ALJ

9

improperly discredited Dr. Mosley's opinion in this time period. She argues that the ALJ relied on later-in-time evidence to conclude that Sutherland had the RFC to work. Specifically, she argues the ALJ relied on the mental impairment questionnaire of Dr. De Yanez to discredit Dr. Mosley's 2008 questionnaire. The only medical evidence that could contradict Dr. Mosley's opinion, she argues, is the consultative examination by Dr. Kurz and the record review by Dr. Fugate. Sutherland believes these submissions cannot trump Dr. Mosley's findings. *See Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) ("A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." (internal quotation marks omitted)).

Sutherland principally relies on our decision in *Morales*. There, the claimant had Dependent Personality Disorder and a history of drug and alcohol abuse. *Id.* at 312–13. A treating physician concluded that Morales had an "impaired ability to concentrate, perform activities within a schedule, make decisions, be aware of normal hazards, and function when under stress or change." *Id.* at 313. His long-time treating physician, Dr. Erro, further concluded that "his ability to deal with work stresses, behave in an emotionally stable manner, relate predictably in social situations, and demonstrate reliability is . . . 'poor or none.'" *Id.* at 315. The treatment records corroborated that conclusion. *Id.* Another physician noted that Morales appeared to be intentionally obstructive and purposefully answered questions incorrectly. *Id.* at 314. A non-examining psychologist, lacking some of the other medical reports, reached a contrary

10

conclusion: Morales is not significantly limited and can "remember locations and work-like procedures, understand and remember simple instructions, ask simple questions or request assistance, maintain socially appropriate behavior, take normal precautions, and use public transportation." *Id.* at 314. Despite the weight of evidence in one direction, the ALJ relied on the non-examining physician's report and discredited the treating physician's report "based on his personal observations of Morales at the administrative hearing, the evidence in the record of malingering, and notations in Dr. Erro's treatment notes that Morales was stable and well controlled with medication." *Id.* at 317. We concluded that the ALJ's decision lacked substantial evidence because it relied on the non-treating examiner's conclusion and its own opinion, without properly discrediting the weight of evidence suggesting the claimant was disabled. *See id.* at 319 ("Shorn of its rhetoric, this determination rests solely on a rejection of medically-credited symptomatology and opinion, the ALJ's personal observations and speculation, and the testimony of a non-examining vocational expert[.]").

The evidence on the record here does not warrant the same conclusion. Unlike in *Morales*, Dr. Kurz's consultative examination included a personal examination of Sutherland. *Contra id.* at 319 (emphasizing the ALJ's reliance on a *non-examining* physician's report). As part of the examination, Dr. Kurz completed an identical medical impairment questionnaire as Dr. Mosley and concluded that Sutherland had only mild limitations in understanding simple instructions and performing tasks. While it is true that "[a] cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians great weight," the ALJ still "may choose whom to credit but

11

'cannot reject evidence for no reason or the wrong reason.'" *Id.* at 317 (quoting *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)). In addition to placing due weight on Dr. Kurz's examination, the ALJ gave multiple sound reasons to discredit Dr. Mosley's opinion: (1) There are no outpatient records from Dr. Mosley to confirm her treatment relationship; (2) Dr. Mosley did not record any deficiencies after Sutherland's hospitalization in November 2008 before completing the medical questionnaire; (3) She performed well on the mini-mental status examination in August 2007; and (4) Sutherland saw improvement after hospitalization when medication resumed. Unlike *Morales*, the ALJ here did not speculate regarding the reasons for claimant's alleged disability, but rather relied upon evidence in the record to conclude that Sutherland is not disabled.[3]

Sutherland also argues that the ALJ failed to consider enumerated factors when concluding that Dr. Mosley's opinion should not receive controlling weight. *See* 20 C.F.R. § 404.1527(c) (setting out factors). Under the regulations, the ALJ should "consider all of the following factors in deciding the weight [to] give to any medical opinion": (1) examining relationship; (2) treatment relationship including length of treatment and nature and extent of the treatment; (3) supportability of the evidence; (4) consistency with other evidence; (5) specialization of the professional; and (6) other

---

[3] Sutherland argues that the ALJ inappropriately relied on later-in-time evidence, namely Dr. De Yanez's report in 2011 that assessed a GAF score of 65, to discredit Dr. Mosley's opinion. Although the ALJ references Dr. De Yanez's report when discussing Dr. Mosley's opinion, even without her report, the ALJ offered substantial evidence to conclude that Dr. Mosley's opinion should not receive controlling weight.

factors brought to the attention of the ALJ. *Id.* at § 404.1527(c)(1)–(6). Although the ALJ did not specifically identify each factor, all relevant factors were considered throughout the lengthy, detailed opinion. *See Massanari*, 247 F.3d at 42 ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Here, the ALJ conducted a thorough examination of the record and appropriately considered the relevant factors.

Sutherland also argues that the ALJ failed to appropriately consider the low GAF scores during the November 2008 hospitalization and relied on speculative inferences in dismissing them. To the contrary, the ALJ thoroughly considered the scores. It noted that the low GAF scores accurately reflect the time period during and immediately after hospitalization, but do not extend to later time periods. It further dismissed GAF scores, in general, as an unreliable indicator of a claimant's overall disability status and noted that the Diagnostic and Statistical Manual has since ceased use of GAF scores. And when addressing the particularly low GAF score of 14, it concluded that this may have been a clerical error. Far from a speculative inference, that conclusion is supported by substantial evidence because it is unlikely the hospital would have discharged Sutherland if they also concluded she had a lower GAF score than when admitted. It nonetheless credited the low GAF scores as reasonable for the limited time period when Mosley was hospitalized and in need of medical care. Taken together, the ALJ supported its decision

13

to credit the low GAF scores for a limited time period and dismiss the scores as indicative of Sutherland's overall RFC with substantial evidence.

Finally, Sutherland argues that the ALJ inappropriately relied on the fact that Sutherland is stable when compliant with her medication. *See Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 356 (3d Cir. 2008) ("[A] doctor's observation that a patient is 'stable and well controlled with medication during treatment does not [necessarily] support the medical conclusion that [the patient] can return to work.'" (quoting *Morales*, 225 F.3d at 319)). But in *Brownawell*, the ALJ's reliance on the physician's treatment note that Brownawell's symptoms were stable with medication went against that physician's ultimate conclusion that Brownawell is disabled. *See id.* at 355 ("It is clear that Brownawell's treating physician considered her to be disabled."). Here, both Dr. Kurz and Dr. De Yanez's observations that, when compliant, Sutherland's bipolar disorder can be controlled, coincide with conclusions that Sutherland has the capacity to work. Thus the ALJ's conclusion that Sutherland can return to work, even though it may require medical compliance, is supported by substantial evidence.

As for the 2009 to 2014 period of alleged disability, the ALJ's conclusion that Sutherland was not disabled is also supported by substantial evidence. Dr. De Yanez treated Sutherland from 2010 to 2012. In 2011, Dr. De Yanez assessed Sutherland a GAF score of 65, and consistently reported in her treatment notes that Sutherland was doing well. In 2012, Dr. De Yanez completed a medical impairment questionnaire and concluded that Sutherland was unlimited or very good in her ability to remember work-like procedure, carry out simple instructions, and maintain regular attendance. She noted

14

that Sutherland was limited but satisfactory in her ability to remember and carry out detailed instructions. She concluded that her impairments would not cause her to be absent from work. Although Dr. De Yanez provided the most positive outlook for Sutherland, the ALJ moderated Dr. De Yanez's conclusions, giving considerable weight to her conclusion that Sutherland can follow simple instructions, but rejecting the opinion that the claimant can perform more complex tasks. That conclusion was based on the treatment records, as well as the opinions of the other treating physicians.

As for Dr. Dupree and Roberts, the ALJ also rejected their conclusion that Sutherland could not return to work in any capacity, in part due to the severity of her episodes. The ALJ reasonably concluded, after detailing Dr. Dupree and Roberts' treatment notes, that, despite several periods of medical noncompliance, there is minimal evidence of severe episodes or relapses since Sutherland's 2008 hospitalization. The ALJ's decision that those periods of medical non-compliance do not amount to work-precluding episodes is supported by substantial evidence when considering the other opinions and evidence in the record.

**B. Remand is inappropriate, as the record contains sufficient medical documentation to determine Sutherland's disability status.**

Sutherland argues that the ALJ failed to update the medical record on remand with sufficient evidence to make a disability determination. *See Ferguson v. Schweiker*, 765 F.2d 31, 36 n.4 (3d Cir. 1985) ("Thus, in an SSI case, if there is insufficient medical documentation or if the medical documentation is unclear, it is incumbent upon the Secretary to secure any additional evidence needed to make a sound determination.").

15

But here, the medical evidence is more than sufficient to make a disability determination, including documentation from several treating and non-treating physicians, as well as testimony from Sutherland at multiple hearings.[4]  Thus, the ALJ did not err in denying disability status based on the record before it.

## IV

We will affirm the District Court's order granting Summary Judgment because the ALJ's conclusion that Sutherland is not disabled is supported by substantial evidence.

---

[4] Sutherland notes that the record only includes Dr. Mosley's prescriptions from 2007 to 2008, and not the corresponding treatment notes. While those may be helpful to a determination, the record was sufficient for the ALJ to make a determination of disability without them.

16

I cannot agree that the ALJ's decision to deny Ms. Sutherland disability benefits is supported by substantial evidence, and I therefore must respectfully dissent from my colleagues' decision to affirm the ALJ's ruling.

The ALJ not only rejected the conclusions of Ms. Sutherland's treating physicians, Dr. Mosley and Dr. Dupree, he also ignored the conclusion of Sutherland's therapist, Ms. Roberts. Those heath care professionals had the opportunity to observe Sutherland over a protracted period while she was compliant and taking her medication, as well as during those periods when she was either not taking her medication or when her symptoms were not adequately addressed by her medication. All three of those healthcare professionals concluded that Sutherland's bipolar disorder with psychotic features prevented her from working. Moreover, their assessment is consistent with, and confirmed by, the objective metric of her GAF scores.

The ALJ's decision to the contrary failed to give

the treating physicians' medical conclusions the "great weight" required by our precedent, particularly in mental health cases. *See Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000).

Instead, the ALJ based his decision on his own review of the medical evidence and reliance on the statements of a non-treating physician who evaluated Ms. Sutherland at one moment in time. Most egregiously, however, the ALJ even interjected his own speculative conclusion that Sutherland's GAF score of 14—indicating gross impairment—could be attributed to a clerical error. That conclusion is not based upon any testimony of any health care professional; it is based only upon the ALJ's rank speculation.

In *Morales*, we reaffirmed the principle that when an ALJ rejects a treating physician's conclusion, the ALJ "may not make speculative inferences from medical reports" or substitute the ALJ's "own credibility judgments, speculation, or lay opinion." *Id.* Yet, that is precisely what this ALJ did. The ALJ's supposition that a possible clerical error accounts for evidence inconvenient to his conclusion is precisely the kind of speculative inference that *Morales* prohibits.

My colleagues' contrary conclusion relies upon the opinions of Dr. Kurz—a non-treating physician or

2

"consultative psychologist"—and Dr. Yanez. But that is inconsistent with our caution in *Brownawell v. Comm'r Soc. Sec.*, 554 F.3d 352, 356 (3d Cir. 2008) (citing *Morales*, 225 F.3d at 319). There, we explained that stability on medication does not necessarily support a medical conclusion that the claimant can return to work.

I therefore believe we should reverse the District Court's order affirming the ALJ's denial of disability benefits, and instead direct that court to award benefits that she is clearly entitled to on this record. This administrative record has been fully developed and there is substantial evidence that Sutherland is disabled and entitled to benefits. *See id.* at 357-58. "[T]he disability determination process has been delayed due to factors beyond the claimant's control." *Id.* at 358. Ms. Sutherland has waited nearly 12 years for her claims to be adjudicated. There is no good reason to make her wait any longer.